Charles F. **LEWIS** and **Winifred Jane Lewis, husband and wife, Appellants (Defendants below),**

v.

Nathaniel J. **ROPER** and **Sabrina Roper, husband and wife, Appellees (Plaintiffs below).**

No. 4749.

Supreme Court of Wyoming.

May 26, 1978.

Donald E. Jones, of Jones & Rogers, Torrington, for appellants.

Bob C. Sigler and Dan J. Pauli, Torrington, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS, and ROSE, JJ.

GUTHRIE, Chief Justice.

This is an appeal by Charles F. Lewis and Winifred Jane Lewis, husband and wife, defendants below, from a judgment rescinding a contract for the sale of their ranch and assessing damages against them for pasturing their cattle.

The primary question raised in this appeal is whether appellees were entitled to a rescission of a written land contract on the basis of the parties' failure to consummate certain oral side arrangements for the purchase of appellants' cattle and machinery. After a trial before the district court, the parties' written land contract, whereunder appellees had agreed to purchase appellants' ranch property, was rescinded and appellee-buyers were awarded a judgment for $33,948. The award represented down payments made on the ranch and certain costs incurred in the pasturing of appellants' cattle, less a reasonable rental value attributed to appellees' use of the ranch. We will reverse the judgment upon a finding that there were no grounds for rescission in this case.

In February 1975, the appellees began negotiations for the purchase of appellants' ranch, which is located in Niobrara County, Wyoming. The parties met on February 27 and 28 to inspect the ranch and discuss terms. According to the appellees, they indicated during these discussions the need to consolidate appellants' land, cattle, and machinery into a "package deal" due to appellees' financial condition. Appellees had $70,000, of which $60,000 could be invested in these three items. Appellees state that appellants said they could provide a package deal, and that appellees could purchase their equipment for $15,000 with interest at eight and one-half or nine percent, payable when calves were sold the next fall, and the balance of interest and principal payable over a period of three years. At the same meeting, the appellants allegedly agreed to sell them 400 head of cattle—later reduced to 360 head—for $200 to $225 a cow-calf pair and $500 for each bull. The parties completed this meeting by agreeing to reduce the cattle and machinery terms to writing.

On March 4, the parties again met to work out the purchase terms. At this meeting the proposed terms for the package deal remained essentially the same, except for the cattle purchase. Instead of the $200 per head figure, appellants allegedly agreed to sell the cattle for ten dollars less than the market price for the selected cattle on the date of acceptance. Also at this meeting appellant-sellers tendered a written land contract and requested that the appellees make certain agreed-upon changes, retype the document, and forward it to appellants for signatures. This document contained no mention of the cattle and machinery terms. Subsequently the parties decided to have appellants' attorney review their land contract, and a meeting was arranged for March 21. At this meeting the land contract was signed by both parties. The "package deal" was again discussed, but on the advice of appellants' attorney the cattle and machinery terms were not included in the land contract. Appellees state, however, that the appellants still agreed to the terms discussed on March 4. Appellants deny that there was ever an oral agreement as to the cattle and machinery prior to or on March 21, and further deny they were aware of the appellees' claimed necessity to have a "package deal."

On April 9, appellees entered into possession of the ranch, having tendered a partial down payment of $10,000. Most of the machinery which had been discussed was already on the ranch. On May 8, the cattle selected by appellees from a herd located on appellants' Goshen County ranch were delivered. Appellees tendered the remaining down payment of $60,000 on May 9. Subsequent to the cattle delivery, the parties sought to determine their market price, which appellees claim to have been $250 per head. Ropers assumed, therefore, that in accordance with the parties' previous discussions they would owe appellants $240 per head. On or about June 1, appellants tendered a written contract pertaining to the cattle and machinery. The contract provided that the cattle cost would be $300 per

head, and contained terms which appellees felt were at variance with the parties' prior discussions. Appellees refused to sign the contract, and later advised appellants to remove the cattle from the ranch. Appellants did so July 9. Appellees told appellants on June 14 that if the cattle were not removed, there would be a charge of $12 per head per month for pasturing.

Appellees pursued alternative cattle and machinery financing, and attempted to negotiate a settlement or adjustment with the appellants through September. On October 13, appellees gave notice of their intention to rescind the land contract, offering to restore the property upon receipt of their down payment and certain damages.

On December 16, appellees filed an action against appellants, asserting fraud and misrepresentation as to matters not relevant to this appeal, and asserting breaches of both written and oral agreements. Appellants answered, admitting that there had been an agreement to purchase appellants' cattle but there had been no agreement as to the price or other terms, and alleging that there had been no agreement as to the machinery. Appellants also counterclaimed, demanding forfeiture under the land contract and liquidated damages. During the course of pleading, appellees were not allowed to amend their complaint to allege that the oral agreements as to cattle and machinery were conditions precedent to their obligations under the land contract. At the trial, appellants objected to testimony concerning the oral side deals as being violative of the parol evidence rule. The trial court, however, allowed the testimony on the basis that it did not and would not consider such evidence as altering the terms of the land contract. Upon completion of the trial, the district court entered judgment, which states in relevant part:

"THE COURT FURTHER FINDS that at the time the parties entered into the Purchase Agreement dated March 21, 1975, for the sale of the ranch presently in issue, it was the intent and belief of Plaintiffs that there was an agreement existing between the parties which covered and included side deals on the sale of cattle and machinery to Plaintiffs as well as the sale of land, whereas it appears from the evidence that Defendants Charles F. Lewis and Winifred Jane Lewis had different thoughts and beliefs regarding the sale of the cattle and machinery believing that discussions thereto were just agreements to agree. The Court further finds that the cattle and machinery portion of the transaction were material items to the entire transaction of the parties. The Court therefore concludes that there was never here a meeting of the minds between the parties on a material portion of their agreement, and for that reason the Court further concludes that the aforesaid contract dated March 21, 1975, must be declared void and held for naught and a recission [sic] of said contract should be awarded to Plaintiffs."

The district court also found that appellees were entitled to recover $3,948 for the pasturing of appellants' cattle which were delivered in May 1975.

On appeal, appellants raise four issues which can be stated as follows:

1. Whether the written land contract can be rescinded because of the failure to consummate oral arrangements for the purchase of cattle and machinery.

2. Whether appellees waived their right to rescind the land contract.

3. Whether there was a sufficient offer to restore the ranch property to appellants.

4. Whether there was sufficient evidence as to the award for pasturing appellants' cattle.

Since we will answer the first question in the negative, we need not respond to the second and third questions.

The district court concluded that "there was never a meeting of the minds between the parties on a material portion of the transaction." Appellants contend first that the court committed error in allowing testimony to be given relative to the alleged oral agreements in violation of the parol evidence rule. Second, appellants contend

that even if such testimony was admissible, appellees failed to show a binding agreement as to the cattle and machinery items which would act as a condition precedent to the effect of the land contract. Inherent in appellants' second contention is a view that the cattle and machinery items, not being conditions precedent to the land contract, were not material to the land transaction.

■ We disagree with appellants' first contention, and find there was no error in admitting testimony relative to the alleged oral agreements. This court has recognized the principle that parol evidence is admissible to show a condition precedent, *National Union Fire Insurance Company of Pittsburgh, Pa. v. Studer Tractor and Equipment Co.*, Wyo., 527 P.2d 820, 827; *North American Uranium, Inc., v. Johnston*, 77 Wyo. 332, 316 P.2d 325; and *McClintock v. Ayers*, 36 Wyo. 132, 253 P. 658, rehearing denied 36 Wyo. 156, 255 P. 355. In addition, we have embraced the so-called partial integration rule which would allow parol evidence with respect to a part of a whole transaction not reduced to writing, where such evidence does not contradict or vary the terms of the instrument, *Allen v. Allen*, Wyo., 550 P.2d 1137, 1141; and *North American Uranium, Inc. v. Johnston*, supra. See, *Cody Community Television Corp. v. Way*, Wyo., 356 P.2d 1113, 1117, and 3 Corbin on Contracts, § 583, p. 465 (1960).

■ Appellants would have us believe that a written land contract, totally silent as to an alleged sale of personal property, merges all prior negotiations and oral agreements in the writing. This may well be true where the prior negotiations and oral agreements deal with the same subject, 17 Am.Jur.2d, Contracts, § 260, p. 662. The doctrine of merger, however, has no validity in certain situations. In A.L.I. Restatement of the Law, Contracts, § 240, p. 335, it is stated in relevant part that:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written

agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

■ There is, however, a general rule recognized by Corbin, which appears more directly applicable to the facts in this case and which is set out as follows:

"Everyone agrees that the mere existence of a written document does not prove that a contract has been made. This is true, even though the document has all the appearance of a contract complete in every detail, with signatures, witnessing clause, and other legal symbols. Everyone agrees, also, that if no contract has been made, the 'parol evidence rule' has no application. This has supplied one of the frequently used methods by which courts have explained their admission of oral testimony in conflict with a document. A written document, unconditional on its face and fully executed, can be shown by oral testimony to have been delivered subject to a condition precedent. As long as the condition has not occurred, so they say, no contract has been made. Therefore, oral proof of the conditional delivery is admissible in spite of the face of the document to the contrary." 3 Corbin on Contracts, § 589, pp. 530–532 (1960).[1]

This section cited in *Cosper v. Hancock*, 163 Colo. 263, 430 P.2d 80, 81, and *National Boulevard Bank of Chicago v. Corydon Travel Bureau, Inc.*, 95 Ill.App.2d 281, 238 N.E.2d 81, 85; and see *Merritt v. Walter Pocock Associates Brokers, Inc.*, 105 Ariz. 392, 465 P.2d 585, 586, and *Bredouw v. Jones*, Okl., 431 P.2d 413, 417.

---

1. A different portion of this section which appeared in the preceding edition was cited by Justice Blume in *North American Uranium v.* *Johnston*, supra, to illustrate the confusion surrounding the application of the parol evidence rule.

■ The written contract in this case makes no mention of cattle or machinery. The district court, given the surrounding circumstances, was justified in admitting parol evidence relative to the purported oral cattle and machinery agreements, under any of the principles discussed herein. The more serious question is whether the parol evidence which was admitted was sufficient to support a judgment of rescission.

In *National Union Fire Insurance Company of Pittsburgh, Pa. v. Studer Tractor and Equipment Co.*, supra, we cited with approval the following from *McClintock v. Ayers*, supra, 253 P. at 661:

" * * * The defendants had the right to impose the condition whatever their reasons * * *, and, if it was imposed as a condition precedent, and the plaintiff had notice of it, and the additional signature was not obtained, the writing did not become effective as a contract."

The key, however, to such a position is a showing that the parties *agreed* to the condition precedent, A.L.I. Restatement of the Law, Contracts, § 241, p. 341.

To arrive at the judgment which the trial judge did, he must necessarily have found that the agreements to sell these cattle and machinery were conditions precedent in face of the fact that there is a clear and understandable contract for the sale of the ranch with no mention thereof.

"Conditions precedent are not a favorite of the law and will not be read into a contract by implication," *Servco Equipment Company v. C. M. Lingle Company*, Mo. App., 487 S.W.2d 869, 871; and *United States v. Schaeffer*, 9 Cir., 319 F.2d 907, certiorari denied 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767; 17 Am.Jur.2d, Contracts, § 321, p. 752.

■ It is necessary to show that the parties agreed to the condition precedent, *Northern State Construction Company v. Robbins*, 76 Wash.2d 357, 457 P.2d 187, 191; *Wallerius v. Hare*, 194 Kan. 408, 399 P.2d 543, 547; A.L.I. Restatement of the Law Contracts, § 241, p. 340. Here the trial court found that the parties had *not* agreed upon the terms of the sale of the cattle and machinery prior to the execution of the land contract; nor was it mentioned in any manner in the principal contract. We find the following observation particularly applicable in this case:

" * * * a condition precedent may not be implied when the same might have been foreseen and provided against by express agreement. * * * " *Jaffe v. Patterson Realty Company*, Ohio App., 133 N.E.2d 655, 659.

Also, see *Palmquist v. Allarydce Petroleum Corporation*, 164 Mont. 178, 520 P.2d 783, 784; 17A C.J.S. Contracts § 338, p. 322.

■ In the present case, however, the district court found that the cattle and machinery portions were nevertheless material to the entire transaction. It was within the court's discretion to believe the appellants' testimony to the effect that there had been no oral cattle or machinery agreements, and in doing so it necessarily precluded a finding that such agreements were conditions precedent to the binding effect of the written land contract. We, therefore, must view the court's finding that the cattle and machinery items were material to the transaction as being similar to a finding that appellees were induced to sign the land contract because of a belief as to agreement on the side purchases. We find this position to be somewhat anomalous since when one party to a contract clearly and unequivocally expresses the condition thereof precedent to his performance, prior to consummation of the contract, and the other party stands mute while the first party performs, the second party may not thereafter disavow such conditions, *Real Estate Marketers, Inc., v. Wheeler*, Fla.App., 298 So.2d 481, 484. The second party's silence or failure to protest may by acquiescence be treated as agreement, especially where the first party was relying on the condition. There is some evidence in the record to show that Mr. Lewis was aware of the appellees' financial condition, but there is no evidence to show that appellants acquiesced to appellees' demands concerning cattle and machinery prior to the execution of the written land contract. Appellants admit there

was such an agreement at the time the cattle were delivered. Appellees claim there was an agreement prior to March 21, but appellants deny it, and we see no basis on which to reverse the district court's finding of no agreement on the cattle and machinery items. There being no such agreement, we are left with the district court's conclusion that the side purchases were material to the entire transaction and that without agreement thereon there could be no binding land contract.

■ Although these observations might also be related to appellants' waiver argument, we find that appellees' actions indicate that the cattle and machinery items were not material to the effect of the land contract. After the cattle were delivered on May 8, 1975, the parties sought to finalize the cattle purchase. Before this time no firm purchase price had been established, even though there had probably been some talk about using market price less ten dollars. When confronted with appellants' offer to sell the cattle for $300 per cow-calf pair, the appellees rejected the offer, stating that they could buy cattle cheaper elsewhere, and then requesting that appellants remove their cattle from the land. With respect to the machinery, appellees rejected the down payment terms offered by appellants in early June. Immediately thereafter appellees purchased other machinery to do the haying and other ranch work—presumably on acceptable terms. It should be remembered that the only testimony as to market price for the cattle was that prices ran from $300 to $325 per cow-calf pair during the times relevant to this case. Appellees' actions indicated that they could run the ranch which they had purchased with cattle and machinery acquired elsewhere. In this regard we note that appellees' primary bases for their action against the appellants were fraud, misrepresentation, and breach of oral and written contracts. All of these bases were rejected by the district court and are not now before us. The materiality of the cattle and machinery items was, therefore, positioned more as an afterthought, which was unsupported by appellees' own actions.

Additionally, it is hard to view appellees' claim for rental for pasturing the cattle and for the hay harvested by them upon these premises during their possession as being consistent with a claim that there was no contract for the purchase of these lands. We see no basis for rescission.

■ The appellants' fourth issue does not merit an extended discussion. Suffice it to say that there is sufficient evidence in the record to support the award of $3,948 for the pasturing of appellants' cattle between June 14 and July 9, 1975. The evidence discloses that on June 14 appellees demanded $12 per head per month pasture fees for the 329 head of cattle left on their ranch after negotiations for their purchase fell through. Simple multiplication would indicate that the award was made on this basis. It was within the trial court's discretion to determine that this was a reasonable value for the services rendered, and we see no basis on which to reverse the award.

We hold that appellees failed to show that the oral side purchases of cattle and machinery were material portions of a transaction which also included the purchase of appellants' land by written contract. No other grounds being proven, appellees were not entitled to a rescission of their written land contract. The district court, however, did not err in awarding appellees pasturing fees. Appellants request that the case be remanded for entry of judgment upon their counterclaim for forfeiture and attorney's fees under the land contract. We see no other alternative but to do so, subject to further proceedings being held on the question of liquidated damages and whether part or all of appellees' $60,000 down payment should be returned under the circumstances.

Reversed in part and affirmed in part.