2001 WY 74

John W. COLLINS and Rexine Collins; Empire Auto Sales, Inc.; and William J. White and Judy White, Appellants (Defendants/Third Party Plaintiff),

v.

Rick L. FINNELL and Karen Finnell, Appellees (Plaintiffs/Third Party Defendants).

No. 00–127.

Supreme Court of Wyoming.

Aug. 15, 2001.

Franklin D. Bayless of Bayless & Slater Law Firm, P.C., Cheyenne, WY, Representing Appellants Collins and Empire Auto Sales.

Ernest W. Halle, Cheyenne, WY, Representing Appellants Whites.

Bert T. Ahlstrom, Jr., Cheyenne, WY, Representing Appellees.

Before LEHMAN, C.J.; GOLDEN, HILL, and KITE, JJ.; and DAN SPANGLER, D.J. (Ret.).

KITE, Justice.

[¶1] John and Rexine Collins and William and Judy White (the buyers) and Empire Auto Sales, Inc. appeal from the trial court's order which awarded $20,340.16 to Rick and Karen Finnell (the sellers) as a result of the breach of a Stock Purchase Agreement. The judgment was for all amounts unpaid under the Stock Purchase Agreement, and the trial court further provided that the parties should remain bound by all the terms and conditions therein. In addition, the buyers breached a separate agreement, the Assumption Agreement, claiming the sellers had committed fraud by falsely representing the existence of certain loans that they were to assume. The trial court found no fraud, yet it determined the sellers failed to prove the existence of the underlying debts which were the consideration for the agreement. Even so, the trial court held the buyers were not entitled to a refund of the payments made pursuant to the Assumption Agreement. We affirm that portion of the trial court's order relating to the Assumption Agreement but on different grounds than those employed by the trial court and reverse that portion of the order pertaining to the Stock Purchase Agreement.

## ISSUES

[¶2] The Collinses and Empire Auto Sales present the following issues for our review:

1. Whether the District Court Orders and Judgment relative to individual Defendants (Appellants herein) John Collins, Rexine Collins, William J. White and Judy White are in error, not warranted by sufficient evidence and are contrary to law as to the finding:

A. That Defendants are in breach of the Stock Purchase Agreement.

B. That Plaintiffs Rick Finnell and Karen Finnell shall have judgment through April 30, 1999 for Twenty Seven Thousand Nine Hundred Sixty Seven Dollars and Fifty [Six] Cents ($27,-967.56) less the deposit in Court of Seven Thousand Six Hundred Twenty Seven and Fifty Six Cents ($7,[62]7.[5]6).

C. That individual Defendants shall remain bound by the "Stock Purchase Agreement" as to all terms and conditions thereof to include but not be limited to, payments to be made thereunder.

2. Whether the district court erred as a matter of fact and law as to the court's order on Collins and White's Counterclaim in ruling that although Rick and Karen Finnell failed in their proof of the exis-

tence of notes as Empire Auto obligations under the "Assumption Agreement," John Collins and William White are not entitled to recover the $27,000.00 paid on the non-existing obligations.

The Whites raise these issues:

ISSUE 1: Did the District Court err when it granted Plaintiffs/Appellees a judgment against the Defendants/ Appellants for the remaining balance due on a defaulted Stock Purchase Agreement which contained a forfeiture upon default provision[?]

ISSUE 2: Did the District Court err when it failed to order a refund of monies paid by the Defendants/Appellants, by mistake, under an Assumption Agreement by erroneously deeming the Defendants/Appellants to be volunteers as per *Commercial Union Insurance Co. v. Postin,* 610 P.2d 984 (Wyo.1980)[?]

The sellers did not list any issues in their brief.

**FACTS**

[¶ 3] In November of 1994, the sellers entered into various agreements with the buyers regarding the purchase of a used car business for approximately $370,000. One of the agreements was the Stock Purchase Agreement providing for the purchase of all the stock of Empire Auto Sales, Inc., a Wyoming corporation. As consideration for the stock, the buyers agreed to pay $75,000 by making payments over a period of seventy-two months. In addition to the Stock Purchase Agreement, the parties entered into an Assumption Agreement whereby the buyers were to assume and repay certain debts for and on behalf of the corporation. The debts totaled $85,000 and consisted of the "Hillard Note," payable at the rate of $1,800 annually, and the "Finnell Call Note," payable at the rate of $750 monthly, until each was satisfied. Two years later, after paying on the notes as provided in the contract, the buyers became delinquent. The sellers demanded complete payment in satisfaction of the Assumption Agreement which the buyers refused claiming the sellers had not produced promissory notes for the debts referenced in that agreement. As a consequence of the dispute over

the Assumption Agreement, the buyers also defaulted on the Stock Purchase Agreement which referenced those terms provided in the Assumption Agreement, and the sellers sued. The buyers counterclaimed alleging fraud in the Assumption Agreement and sought return of the monies they had already paid under that agreement.

[¶ 4] On July 13, 1999, the trial court entered a judgment against Mr. and Mrs. Collins and Mr. and Mrs. White, jointly and severally, on the Stock Purchase Agreement. It examined the Stock Purchase Agreement and concluded the buyers breached the agreement without just cause or excuse. The trial court further determined the contract did not provide for acceleration; however, the parties should remain bound by all terms and conditions including future payments for the unpaid balance in the amount of $20,340.16. As to the Assumption Agreement, the court found no fraud but concluded the sellers failed in their proof of the existence of the underlying debts which were the consideration for the Assumption Agreement. Despite this finding, the trial court determined the sellers were entitled to keep the monies already paid on the obligations.

[¶ 5] Pursuant to W.R.C.P. 59, the buyers alleged the court erred in the assessment of the amount of the recovery, the decision was not sustained by sufficient evidence, and the decision was contrary to law on several bases. Subsequent to a hearing on the W.R.C.P. 59 motions, the trial court generally denied the motions with the exception of a modification to clarify that the order as it relates to the Assumption Agreement was res judicata as to the sellers, and, as a result, the sellers are foreclosed from pursuing any further cause of action relating to the Assumption Agreement. This appeal followed.

**DISCUSSION**

**A. Assumption Agreement**

[¶ 6] The trial court properly concluded the buyers are not entitled to recover for payments made pursuant to the Assumption Agreement; however, the decision was not based on the appropriate theory of law. After a thorough exploration of the issue at

trial, the trial court determined the sellers had not committed fraud as claimed by the buyers with regard to the notes. However, they also could not prove the existence of the underlying obligations, and, apparently, the trial court concluded such proof was a prerequisite to the sellers' enforcing the remaining payment obligations under the agreement. Applying *Commercial Union Insurance Company v. Postin*, 610 P.2d 984 (Wyo.1980), the trial court determined that Mr. Collins and Mr. White were volunteers and thus not entitled to reimbursement for monies paid. We consider de novo questions of application of the law, including identification of the correct rule. *Fontaine v. Board of County Commissioners of Park County*, 4 P.3d 890, 892 (Wyo.2000). We do not substitute ourselves for the trial court as a finder of fact; instead, we defer to the trial court's findings unless they are not supported by the record or are erroneous as a matter of law. *Kendrick v. Barker*, 2001 WY 2, ¶ 12, 15 P.3d 734, ¶ 12 (Wyo.2001).

 [¶ 7] The language of the Assumption Agreement provides in pertinent part:

WHEREAS, Finnell is obligated on two (2) notes/loans, described for purposes hereof as the "Finnell Call Note", in the approximate sum of Sixty Five Thousand Dollars ($65,000.00), and the "Hillard Note", in the approximate sum of Twenty Thousand Dollars ($20,000.00); and,

WHEREAS, said notes/loans indirectly relate to Empire Auto Sales, Inc., a Wyoming corporation, ownership of which is being transferred this date from Finnell to Collins and White; and,

WHEREAS, Collins and White desire to assume the said notes/loans and obligations related thereto, as part of the said consideration for the sale and transfer of corporate assets referred to above, and Finnell desires to be released from said note[s]/loans and obligations.

NOW THEREFORE, in consideration of the above, and of the mutual covenants and conditions herein contained and other good and valuable consideration, the parties hereto contract and agree as follows:

I. Collins and White hereby assume all liability and responsibility for the "Finnell Call Note" and the "Hillard Note", and agree to fully pay and satisfy the same within two (2) years from date hereof.

II. Collins and White hereby agree to pay interest-only payments on said notes/ loans and obligations, on behalf of Finnell, until the same are satisfied and paid in full, as follows:

A. "Finnell Call Note": Seven Hundred Fifty Dollars ($750.00) per month; and,

B. "Hillard Note": One Thousand Eight Hundred Dollars ($1,800.00) per year.

III. Collins and White hereby agree to save and hold harmless Finnell from any and all payments, liability and responsibility for and relating to said notes/loans and obligations.

[¶ 8] The language relating to the assumed notes is also referenced in the Stock Purchase Agreement and provides in pertinent part:

B. Buyer represents and warrants as follows:

1. Buyers are employees of the Corporation or are otherwise familiar with the books and records and business dealings of the Corporation.

2. Buyers are aware of all outstanding liabilities and obligations of the Corporation[ ], or in any way related thereto, and agree to pay and save harmless Seller as to any and all of such liabilities and obligations, of any type, nature or description, including, but not limited to taxes, assessments, financing, and floor planning, pending or threatened legal matters, the "Hillard Note", and the "Finnell Call Note", and all other similar liens, encumbrances and charges, leases and other contractual obligations.

[¶ 9] For the buyers to recover the amounts paid under the Assumption Agreement, they had to prove fraud—which the trial court concluded they did not—or support some other claim that the monies were wrongfully paid. The contract language did not require the sellers to produce promissory notes for the specifically identified debts the

buyers agreed to assume. Simply because the sellers could not produce promissory notes does not mean the payments made on those debts of the corporation were not contractually required. The plain language of the contract authorized and required the payments. The buyers cite no legal basis to support their claim for reimbursement of such payments.

[¶ 10] To avoid their contractual commitment, in essence the buyers assert there was an oral condition precedent which required the sellers to produce evidence of the "Hillard Note" and the "Finnell Call Note" before they had to perform under the contract. This argument is inconsistent with the clear language of the written contract which makes no mention of such a requirement. "The parol evidence rule prevents extrinsic evidence from being used to contradict, subtract from, add to, or vary the terms of an unambiguous contract." *Frost Construction Company v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo.1998). "We depart from the parol evidence rule only if parol evidence is used to establish a separate and distinct contract, a condition precedent, fraud, mistake or repudiation." *Snyder v. Lovercheck*, 992 P.2d 1079, 1086 (Wyo.1999).

> "A written document, unconditional on its face and fully executed, can be shown by oral testimony to have been delivered subject to a condition precedent. As long as the condition has not occurred, so they say, no contract has been made. Therefore, oral proof of the conditional delivery is admissible in spite of the face of the document to the contrary." 3 Corbin on Contracts, § 589, pp. 530–532 (1960)

*Lewis v. Roper*, 579 P.2d 434, 438 (Wyo. 1978). "The key, however, to such a position is a showing that the parties agreed to the condition precedent." 579 P.2d at 439. "Conditions precedent are not a favorite of the law and will not be read into a contract by implication." *Id.*

[¶ 11] Significant time at trial was devoted to determining whether the sellers had committed fraud by failing to prove the existence of the assumed debt. The trial court ultimately dismissed the buyers' claim of fraud. It specifically concluded:

While there may be a dispute over the significance of these instruments, the fact that the loans are not embodied in the promissory note does not mean that Finnell had committed fraud. He may have been lax in his promise to produce the "notes" in a timely manner, but I am not persuaded that fraud has been established by clear and convincing evidence.

[¶ 12] The record does not support the conclusion that the parties agreed the sellers would produce evidence of the notes as an oral condition precedent to the buyers' performance, and the trial court made no such finding. In fact, the buyers' own testimony and conduct contradict this assertion. Mr. Collins, who as general manager of the used car business had full knowledge of the corporation's books and records, testified he signed the Assumption Agreement without evidence of the underlying debts because he trusted Mr. Finnell. For the same reason, they continued to make payments on the notes for two years without production of the promissory notes until Mr. Finnell demanded complete satisfaction of the Assumption Agreement. " '[A] condition precedent may not be implied when the same might have been foreseen and provided against by express agreement.' " *Lewis*, 579 P.2d at 439 (quoting *Jaffe v. Patterson Realty Company*, 133 N.E.2d 655, 659 (Ohio Ct.App.1955)). The buyers had the opportunity to insert clear language into the contract to require written proof of the underlying obligations. Short of that contractual requirement, we cannot imply the existence of an oral condition precedent where there is inadequate evidence in the record to support such an agreement by the parties. The buyers were aware that the consequence of terminating payments on the Assumption Agreement was default. Parties are free to ignore the provisions of an applicable contract, but those parties do so at their peril and must recognize they may bear the consequences of disregarding those provisions when a breach of the contract becomes a reality. *Colorado Interstate Gas Company v. Natural Gas Pipeline Company of America*, 842 P.2d 1067, 1070 (Wyo.1992). The buyers cite no theory of law that would support their recov-

ery of monies paid pursuant to a valid contract.

▆ [¶ 13] The buyers urge this court to consider the theories of mutual mistake and failure of consideration. "A mutual mistake is one that is reciprocal and common to both parties, each alike laboring under the same misconception." *Kendrick*, ¶ 19. No evidence exists that the sellers were mistaken as to the existence of the debts which were to be assumed. Thus, the theory of mutual mistake is unsupported by the record.

▆ [¶ 14] Lastly, the buyers briefly argue failure of consideration. However, this assertion is provided without any analysis. In fact, the clear contract language provides that the debts were obligations of the corporation and the assumption of the notes was "consideration for the sale and transfer of corporate assets." We hold the buyers are not entitled to a refund of the monies already paid pursuant to the Assumption Agreement.[1]

## B. Stock Purchase Agreement

▆ [¶ 15] In resolving whether the remedies provided by the Stock Purchase Agreement in the event of default by the buyers included a deficiency judgment, we must apply our established rules of contract interpretation. The primary purpose in interpreting or construing a contract is to determine the intent and understanding of the parties, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. *Reed v. Miles Land and Livestock Co.*, 2001 WY 16, ¶ 10, 18 P.3d 1161, ¶ 10 (Wyo.2001). The interpretation and construction of a contract are done by the court as a matter of law. *Id.* Where an agreement is in writing and the language is clear and unambiguous, the parties' intent is to be secured from the four corners of the contract. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 598 (Wyo.1989). We consider the contract as a whole, taking into consideration the relationship between the various parts.

*Id.* "We turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain." *Wolter v. Equitable Resources Energy Company, Western Region*, 979 P.2d 948, 951 (Wyo.1999). Whether or not a contract is ambiguous is a question of law for the court. *Corpening v. Corpening*, 2001 WY 18, ¶ 8, 19 P.3d 514, ¶ 8 (Wyo.2001).

▆ [¶ 16] The pertinent language of the Stock Purchase Agreement which shall be reviewed for ambiguity is as follows:

> IV. *DELIVERY IN ESCROW:* Seller shall deliver in escrow, to BERT T. AHLSTROM, JR., as escrow agent, certificate for the shares of stock sold pursuant to this Agreement, duly endorsed in blank for transfer, and accompanied by all other documents necessary for an effective transfer. Upon payment of the total purchase price as set forth hereinabove, on the due dates specified, the escrow agent shall deliver the shares of stock being sold hereunder, and all other documents delivered to the escrow agent, to Buyer. The fees and expenses of the escrow agent, if any, shall be paid by Buyer. Should Buyer default hereunder, said escrow agent shall redeliver the shares/certificates and all other escrowed documents to Seller.
>
> . . . .
>
> VI. *DEFAULT BY BUYER:* In the event Buyer defaults hereunder, by nonpayment of the sums of money set forth hereinabove or otherwise, this Agreement shall become automatically and immediately null and void and of no force and effect as to transfer of stock certificate and sale of the same; and Seller shall be allowed to retain all monies paid by Buyer hereunder to that point in time. This delineation does not exclude Seller's additional rights at law or equity.

[¶ 17] The buyers argue the language of the Stock Purchase Agreement is unambiguous and the only remedy specified in the

---

1. This conclusion is premised upon the Assumption Agreement constituting an enforceable contract, and therefore the payments made pursuant thereto were contractually required. However, the sellers did not cross-appeal the trial court's refusal to enforce the contract. Therefore, we will not address whether the sellers are entitled to payment of the remaining amounts owed under the contract. *Racicky v. Simon*, 831 P.2d 241, 244 (Wyo.1992).

contract is termination of the contract and retention by the sellers of the amount already paid. They contend the contract language, which provides that the sellers' additional rights at law or equity are not excluded, can only be construed to be applicable to those remedies available to a null and void contract. Therefore, the trial court's decision that the parties shall remain bound by the agreement is contrary to the clear language of the contract. The buyers additionally argue the agreement is in the nature of an installment land contract and therefore the exclusive remedy is forfeiture, not a deficiency judgment.

[¶ 18] In contrast, the sellers contend there is at least a modicum of ambiguity in the contract language. According to the sellers, the contract only specifically provides the agreement is automatically and immediately null and void and of no force and effect as to the transfer and sale of the stock certificates. However, the contract language does not preclude the availability of additional remedies upon default with regard to the remaining amount owed under the contract. Moreover, the sellers argue the contract states that the remedies provided do not exclude their additional rights at law or equity. They claim the reliance on installment land contract cases, which involve the sale of real estate, is inapplicable to the facts of the instant case which involves the sale of stock escrowed as security. As a result of this distinction and the ambiguous contract language, the sellers claim the deficiency judgment was appropriately ordered.

[¶ 19] Upon an examination of the Stock Purchase Agreement as a whole, we conclude the contract language was unambiguous. The express terms of the contract provide that upon default the Stock Purchase Agreement shall become automatically null and void as to the transfer and sale of the stock. The only remedy provided by the contract was for the sellers to retain all previously made payments and to have the escrow agent return possession of the stock certificates. There are no enforceable contract rights where a contract is null and void. *Police Protective Association of Casper v. City of Casper*, 575 P.2d 1146, 1150 (Wyo. 1978). If an agreement is void, it cannot be a contract because the law will neither give a remedy for its breach nor recognize its performance as a duty. 1 Richard A. Lord, Williston on Contracts, § 1:20 (4th ed.1990); *see also* Restatement (Second) of Contracts § 7 cmt. a (1981). We will not require parties to remain bound under an agreement which clearly states that it shall become automatically null and void upon the occurrence of a specified event. "When parties make a contract and reduce it to writing, they must abide by its plainly stated terms." *Colorado Interstate Gas Company*, 842 P.2d at 1070. Even if we were to have found ambiguity in the contract as urged by the sellers, we note that the sellers' attorney drafted the Stock Purchase Agreement and any ambiguity in the contract is construed against the drafter of the agreement. *Prudential Preferred Properties v. Underwood Ranch Company*, 873 P.2d 598, 600 (Wyo.1994).

[¶ 20] The sellers argue the contract language preserves their "additional rights at law or equity." We agree, but only those available rights at law or equity which arise in the face of this null and void contract are preserved. For example, the sellers' brief tenuously suggests there was a diminution in value of the corporation while it was in the buyers' control. If the suggestion is accurate, a derivative action brought by the sellers, now the stockholders, could provide an alternative remedy for the loss in value of the business. W.R.C.P. 23.1; Wyo. Stat. Ann. §§ 17–16–740 to 747 (LexisNexis 2001). However, we make no determination concerning whether a derivative action is warranted in this case. We mention this possibility only as an example of possible "additional rights at law or equity" which might exist and to illustrate the provision has significance and does not create ambiguity.

[¶ 21] Having determined there is no ambiguity in the contract, we have no reason to examine the parties' intent or the distinction between the effect of an installment land contract and a mortgage/security agreement. However, we do note this agreement involved the escrow of stock certificates rather than the sale of real estate. As the sellers point out, the difference lies in the

potential for retaining the value of the asset sold. As written, this contract contemplated the stock certificates would be held in escrow. Upon default, the escrow agent was instructed to return the stock certificates to the sellers. The contract clearly intended the sellers would have no control over the operation of the business during the term of the escrow, exemplified by the sellers' release of voting rights. While it may have been imprudent for the sellers to enter into such a business transaction, we have often stated we will not rewrite contracts under the guise of interpretation and, so long as there is no ambiguity, we are bound to apply contracts as they have been written. *Amoco Production Company v. EM Nominee Partnership Company*, 2 P.3d 534, 540 (Wyo. 2000). We note that the amount at issue in the Stock Purchase Agreement comprised only a small portion of the entire business transaction. Furthermore, the parties selected a remedy upon default which was the return of the stock certificates and the recovery of the sellers' rights as stockholders rather than opting for a deficiency judgment. It is not the court's duty to make a contract for the parties. *Flora Construction Company v. Bridger Valley Electric Association, Inc.*, 355 P.2d 884, 886 (Wyo.1960). We reverse that portion of the trial court's order which granted $20,340.16 to the sellers as a result of the buyers' breach of the Stock Purchase Agreement.

[¶ 22] Affirmed in part and reversed in part.