2001 WY 124

Richard LOYA, Appellant (Plaintiff),

v.

WYOMING PARTNERS OF JACKSON HOLE, INC., a Wyoming corporation, d/b/a Jackson Sign Co., and Gary Schuler, a married man, Appellees (Defendants).

No. 00–165.

Supreme Court of Wyoming.

Dec. 10, 2001.

Representing Appellant: Katherine L. Mead of Mead & Mead, Jackson, WY. Argument by Ms. Mead.

Representing Appellee: Glenn W. Myers of Moore & Myers, Jackson, WY. Argument by Mr. Myers.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Appellant, Richard Loya (Loya), challenges the district court's order granting summary judgment in favor of Appellees, Wyoming Partners of Jackson Hole, Inc., and Gary Schuler (collectively Schuler). Loya asserts that the district court improperly granted summary judgment on his complaint alleging wrongful discharge and breach of contract, intentional infliction of emotional distress, violation of the covenant of good faith and fair dealing, which is implied in all contracts, and application of the doctrine of promissory estoppel. Schuler maintained that the governing contract was unambiguous, that Loya was an at-will employee, that he did not fire Loya, and that Loya did not allege a viable claim of intentional infliction of emotional distress. We will hold that there are genuine issues of fact as to all matters resolved by the summary judgment order. Consequently, we will reverse and remand for further proceedings.

## ISSUES

[¶ 2] Loya presents this statement of the issues:

I. Whether the district court improperly decided disputed issue[s] of material fact when it granted summary judgment in favor of defendants [Schuler]?

II. Whether the district court erred when it found that there was no intentional infliction of emotional distress in this case?

III. Whether the district court ignored competent evidence of a special relationship?

IV. Whether the district court erred when it granted summary judgment on Loya's claim for promissory estoppel?

Schuler counters with this statement of the issues presented on appeal:

I. The court did not improperly decide disputed issues of material fact.

II. Mr. Loya was an at-will employee as a matter of law.

III. There was no intentional infliction of emotional distress.

IV. There was no evidence of a special relationship.

V. The court properly granted summary judgment on the promissory estoppel claim.

## FACTS

[¶ 3] After some preliminary negotiations, Loya asserted that on August 28, 1995, he and Schuler mutually agreed that Loya would be hired as the manager of Jackson Sign Co., which was owned by Schuler. On that date, Schuler posted the following letter to Loya:

Dear Rick,

We are pleased to offer you the position of Manager of Jackson Sign Co. in Jackson Hole, Wyoming to start no later than October 2, 1995.

Compensation will be at $35,000 per annum with an annual performance review. Good reviews will result in annual increases in salary. You will be paid weekly until January 1, 1996. As of the new year all employees will be paid on a bi-monthly basis on the 1st and the 15th of each month.

In addition you will be put on an incentive plan based on the profits of the business pre-tax. This plan could pay up to $10,000 annually, but will probably average $5,000—$8,000.

You and your family will receive medical insurance coverage through Jackson Sign Co. We need to work together to insure no interruption of medical coverage as you transition between jobs.

We will also pay for your relocation to Wyoming from Vermont. We need to work together on this to make the relocation as practical and low cost as possible. You will need to gather for us two moving estimates, one of which would be the cost of a do-it-yourself or U–Haul type situation. We shall choose between the estimates you send us. (In the event that after 1 full year of employment at Jackson Sign Co. things are not satisfactory for you we will pay the cost of relocating you back to Vermont if you choose to do so.)

For your first year here in Jackson we offer to include one season ski pass available to you.

A standard noncompete document will be prepared by us and ready for your signature in the next week or so.

You will be entitled to two weeks vacation annually based on your actual start date. Also the following Holidays are currently observed by Jackson Sign: New Year's Day, Easter, Memorial Day, 4th of July, Labor Day, Thanksgiving, and Christmas Day.

On the personal side, we understand the seriousness and critical nature of you mother's illness. We are prepared to stand behind our offer to you to make arrangements for flights back East as the situation dictates in regard to her health.

Regarding the question of employment for your wife: while we cannot "guarantee" things that are ultimately beyond our immediate control, based on the job market in the Jackson Hole area we will give our best efforts to help her secure employment in the $16,000—$18,000 plus range. As you know conversations with people in her areas of interest confirm this as a realistic projection of her ability to generate income in this market.

We are very happy that you and your family have decided to come to Jackson Hole and we look forward to seeing you about October 1st.

Best regards,

(s/ Gary & Beth)

Gary and Beth Schuler

Jackson Sign Co.

[¶ 4] Schuler was a very experienced corporate executive who had worked for, managed, or served as CEO for many large corporations that ranged in value from $.5 billion to $2.5 billion. Loya was a sign maker. We view these facts as pertinent to the overall resolution of this case, but they are

especially pertinent to the consideration of the non-competition agreement that Loya was contractually required to sign upon the outset of his employment by Schuler:

### NON–COMPETITION AGREEMENT

This agreement is entered into as of October 6, 1995, between Rick Loya ("Employee") and Wyoming Partners of Jackson Hole, Inc. ("Employer").

As an express inducement for and condition of Employer's entering into an employment agreement with Employee, Employee hereby agrees to enter into this Non–Competition Agreement as follows:

### RECITALS

1. Employer owns and operates the business of Jackson Signs in the geographic area set forth herein, and beyond.

2. Employer, as additional consideration for and a term of this Agreement, will provide training, design information and techniques, customer contacts and company goodwill for Employee's use and development.

3. The parties agree that for purposes of this Agreement the term "sign" shall mean:

A sign shall be described as a product or panel which contains words or letters for the purpose of advertising or promoting a business, residence, or event. Signs may be applied or painted on panels, vehicles, buildings, or structures.

*TERM:* The term of this Agreement shall be three (3) years beginning on the date Employee ceases to work for the Employer.

*GEOGRAPHIC AREA:* This Agreement shall apply to and in the following area: The State of Wyoming and Any area within 250 miles of Jackson, Wyoming.

*NON–COMPETITION:* Rick Loya, any business or entity formed or owned by him, his successors, and assigns hereby agree that for the term of this Agreement, as to any customer of Jackson Signs or in the geographic area identified herein, he will not, (1) produce, sell, or offer to sell any sign; (2) offer to provide or produce any marketing or design services for the production or sale of any sign; (3) provide any Jackson Signs customer information to any company, no matter where located, in the business of producing and selling signs, in whole or part; (4) ~~engage in any other business whatsoever, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent or employee or in any other relation or capacity whatsoever, in any business owned and operated by Employer;~~ [this provision was stricken, as shown, and initialed] or (5) disclose to any person or entity, except Employer and its duly authorized officers, employees, or agents entitled thereto, Employer's customer lists, records, statistics, or any other information of whatsoever kind or description acquired by Employee in the course of such employment.

The parties acknowledge that the provisions of this covenant not to compete are essential for the protection of the Company and any breach or threatened breach of this provision would cause immediate and irreparable damage to Company, for which monetary relief would be inadequate or impossible to ascertain. Accordingly, the Parties agree that upon the existence of any breach or threatened breach hereof, the Company may, without limitation of any other rights the Company may have, obtain a temporary restraining order, preliminary injunction or other appropriate form of equitable relief to enforce this covenant not to compete.

*MISCELLANEOUS:*

(A) This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming.

(B) If any provision of this Agreement shall be declared invalid or unenforceable, the remainder hereof shall continue in full force and effect.

[¶ 5] This agreement was signed by Loya and Elizabeth H. Schuler, President of Wyoming Partners of Jackson Hole, Inc., and wife of Schuler.

[¶ 6] Because he was moving his family 2,500 miles from Vermont to Wyoming, Loya wanted to ensure that he obtained an em-

ployment contract that specified his salary, benefits, and duration of employment. Loya believed that he had obtained a job of one-year duration at a salary of $35,000, plus benefits. Loya contends that the letter of August 28, 1995, contained only some of the terms of the oral agreement they had reached over several months of oral negotiations. Loya began his employment on October 6, 1995; the same day he signed the non-competition agreement. Approximately three weeks later, over Loya's objections, he was removed as manager of Jackson Signs and demoted to a production worker with a commensurate cut in pay. He was replaced as manager by Schuler's wife. Schuler indicated that his performance would be reviewed and he might be reinstated after January 1, 1996; however, that never occurred. Loya continued as an employee of Jackson Signs until Schuler's attorney fired him. Schuler contends that he did not fire Loya, but the record leaves open the question of whether he was fired by Schuler's attorney. Loya contends that the contract of employment intended that he be the exclusive manager of Jackson Signs and that his livelihood depended on that job. Loya also contends that Schuler refused to permit Loya to perform the contract as agreed.

[¶ 7] The health of Loya's mother deteriorated, and he traveled to Connecticut to be with her. While Loya was tending to his mother at what proved to be her deathbed, Schuler telephoned him and demanded that Loya resign. Loya refused but was then fired by Schuler's attorney, Glenn Myers. Schuler contended that Loya's work was substandard, but Loya claims that he merely used different techniques and methods, producing signs of equal or better quality than those previously produced by Jackson Signs. Schuler was unable to be specific with respect to the quality of Loya's performance. Loya contends that Schuler had little, if any, experience in sign making, and that Schuler's wife resented Loya, who was caught up in the aftermath of the Schulers' less than friendly divorce. Loya also contends that Schuler was well aware of the grave nature of Loya's mother's health, but, nonetheless, asked for his resignation and then fired Loya, causing Loya severe emotional distress.

## STANDARD OF REVIEW

[¶ 8] A summary judgment is affirmed only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). Summary judgment is inappropriate to resolve factual disputes, so this Court does not weigh disputed evidence. The party who opposed the motion is given the benefit of any reasonable doubt, and inferences drawn from the affidavits, depositions, and exhibits presented as underlying facts are viewed in the light most favorable to that party. An issue of material fact which would preclude summary judgment is found when a disputed fact, if proven, would establish or refute one of the essential elements of a cause of action or a defense which has been asserted; this Court affords no deference to the district court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

## DISCUSSION

[¶ 9] We preface our discussion of the issues with a few caveats. First, this is not a case in which an employee handbook or manual plays any role. Second, Schuler's motion for summary judgment proceeded on the assumption that Loya was an at-will employee. Likewise, the district court's disposition of all the issues presumed Loya to be an at-will employee. In addition, the materials used by the district court in granting summary judgment can only be described as extraordinarily "thin." Neither party submitted much in the way of concrete material that could form the basis for summary judgment. To a large extent, we are left to rely on the assertion of claims well pleaded by Loya but not meaningfully contested by Schuler.

*Existence of Contract for Employment*

[¶ 10] The principal issue we confront, and the one that affects all others, is whether the district court erred in finding as a matter of fact and law that Loya was an at-will employee with no definite term of em-

ployment. Schuler contends that the trial court properly looked only to the letter agreement dated August 28, 1995, and that this Court, too, may not look beyond that agreement. However, we disagree with that proposition. We have embraced the partial integration rule, which allows parol evidence with respect to a part of a whole transaction not reduced to writing where such evidence does not contradict or vary the terms of the written instrument. *Lewis v. Roper*, 579 P.2d 434, 438 (Wyo.1978). Here, the letter agreement does not purport to be an integration of all the oral discussions had between Loya and Schuler. Indeed, the letter forthrightly states that many details are yet to be worked out. It is also clear that the contract would not be complete until such time as Loya signed a non-competition agreement. The terms that are in the letter are not inconsistent with the parol evidence which Loya proposes to offer for submission to a jury. Moreover, it would be a rational conclusion that the letter agreement, by itself, guaranteed Loya employment for at least a period exceeding one year, since Loya could not benefit from Schuler's promise to pay the costs of his relocation back to Vermont until he had completed one year of work for Jackson Signs. We conclude that the letter agreement, when read in conjunction with the non-competition agreement and the parol evidence Loya sought to present, creates genuine issues of material fact which must be submitted to a jury concerning whether or not a contract of employment existed and, if so, what the terms of the contract were.

*Intentional Infliction of Emotional Distress*

[¶ 11] If a jury determines that a contract did exist, and that Schuler breached it, then the court would have to decide if the facts could be considered by a jury as proving the elements of intentional infliction of emotional distress. *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo.1997); *Wilder*, 868 P.2d at 223–24. The district court opined that Loya's allegations in this regard cannot be regarded as so extreme and outrageous as to permit a jury to consider the issue. It is correct that whether the evidence shows such extreme and outrageous behavior as to per-

mit jury consideration must initially be decided by the trial court.

[¶ 12] In *Worley v. Wyoming Bottling Company, Inc.*, 1 P.3d 615 (Wyo.2000), we acknowledged that certain conduct in employment situations might be outrageous enough to provide the employee with a basis of recovery. The standard we set forth to recover under the tort of intentional infliction of emotional distress requires a plaintiff to prove that the defendant acted in an extreme and outrageous manner and that the defendant intentionally or recklessly caused the plaintiff severe emotional harm. 1 P.3d at 628. We have previously cited to Restatement (Second) of Torts § 46 cmt. d (1965), which attempts to clarify the parameters of outrageous behavior:

> *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are

hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

■ [¶ 13] "Both the court and the jury play a role in assessing the validity of a claim of outrageousness." *Worley,* 1 P.3d at 628. As we explained in *Kanzler,* "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." 937 P.2d at 1341 (quoting Restatement, *supra,* § 46 cmt. h).

■ [¶ 14] We must examine the context and background in which events surrounding a claim for intentional infliction of emotional distress take place. *Worley,* 1 P.3d at 629. "In examining context, a number of courts have recognized the employer-employee relationship as a significant factor in determining outrageousness." *Worley,* 1 P.3d at 629 (citing *Kentucky Fried Chicken National Management Company v. Weathersby,* 326 Md. 663, 607 A.2d 8, 15 (1992) (collecting cases)). "It is only natural that a defendant's position of power over a plaintiff may enhance his or her ability to do harm." *Id.* Restatement, *supra,* § 46 cmt. e recognized this reality:

The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.

However, in *Worley* we recognized that liability does not attach upon the mere existence of an employment relationship and cited to a discussion by the Maryland Court of Appeals:

We agree that the employment relationship is a factor to be considered when analyzing whether an employer's behavior was so outrageous that he or she has committed the tort of intentional infliction of emotional distress. That does not mean,

however, that this Court wishes to lower the threshold for determining liability whenever the parties are employer and employee. The conduct must still reach the same degree of outrageousness if an employee is to prove that his or her employer has committed this tort; the employment relationship is merely one factor among many to use in analyzing individual cases.

*Worley,* 1 P.3d at 629–30 (citing *Kentucky Fried Chicken Nat'l Management Company v. Weathersby,* 607 A.2d at 15).

■ [¶ 15] The record demonstrates that Schuler did not submit evidence in support of the summary judgment motion that controverted Loya's complaint that he had suffered an intentional infliction of emotional distress. It is also correct that Loya failed to present any evidence specifically supporting his claim in this regard, but he had no burden to do so. Since Schuler had not come forward with evidence that placed Loya's claim of severe emotional distress in controversy, Loya could rest on the allegations of his complaint. Therefore, we reverse the district court's summary judgment in this regard and this issue should be reconsidered by the district court, in any further proceedings, in the light of the authority summarized above.

*Breach of the Covenant of Good Faith and Fair Dealing*

■ [¶ 16] We have held that recovery of damages is permitted for tortious conduct that arises out of a contractual relationship of employment in breach of the implied covenant of good faith and fair dealing. *Wilder,* 868 P.2d at 220–22. Fundamentally, this tort requires that there be a duty and a breach thereof. *Worley,* 1 P.3d at 624.

■ [¶ 17] Our first inquiry is whether a duty exists. *Worley,* 1 P.3d at 624. "[A]lthough a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability." *Id.* A duty arises only where a special relationship of trust and reliance exists between the employer and the employee seeking recovery. Previous cases indicate

that some of the circumstances that may give rise to a special relationship include separate consideration, common law, statutory rights, or the existence of rights accruing with longevity of service. *Worley,* 1 P.3d at 624. Whether a special relationship exists is a question of fact, not a question of law, and is to be decided by the trier of fact unless reasonable minds could not differ. The primary circumstance in this case is the additional consideration provided by the non-competition agreement.

[¶ 18]  The district court found, "There is no evidence in the record establishing a special relationship in this matter which would support Plaintiff's claim for violation of the covenant of good faith and fair dealing." In this case, after being relocated a great distance, Loya was required to sign a non-competition agreement that was drafted by Schuler's attorney. In *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 541 (Wyo. 1993), the court said, "For example, if an employer hired an employee at will, obtained a covenant not to compete, and then terminated the employee, without cause, to arbitrarily restrict competition, we believe such conduct would constitute bad faith."

[¶ 19]  Based upon the pleadings and record extant, there is evidence so that reasonable minds could differ as to whether Schuler's conduct constituted a breach of the covenant of good faith and fair dealing. That evidence includes the circumstances surrounding the active recruitment of Loya and Schuler's attempt to enforce the non-competition agreement even though Loya was only employed for a few months. For this reason, the district court's summary judgment on this issue is also reversed.

*Promissory Estoppel*

[¶ 20]  Loya asserted that he should be permitted to utilize promissory estoppel as an alternative theory. The district court stated, "The Wyoming Supreme Court has yet to recognize promissory estoppel as an exception to the at-will employment doctrine. There is nothing in the record in this case to support Plaintiff's claim for promissory estoppel." However, in *Worley* this Court specifically adopted promissory estoppel as a theory of recovery in the employment context. 1 P.3d at 623.

[¶ 21]  Promissory estoppel provides relief for an "injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract." *Worley,* 1 P.3d at 623 (quoting *Davis v. Davis,* 855 P.2d 342, 347–48 (Wyo.1993) and *Jankovsky v. Halladay Motors,* 482 P.2d 129, 132 (Wyo. 1971)). In the employment context, promissory estoppel works to prevent injustice to employees who in good faith detrimentally rely upon an employer's actions, in turn, binding the employer to fulfill a promise to an employee despite the lack of an employment contract. Promissory estoppel may only be useful when, because of a lack of consideration, an employee is unable to bring a breach of contract claim. As long as a promise is present and no disclaimer exists, promissory estoppel can be used to satisfy the consideration element. *Worley,* 1 P.3d at 623 and *Honorable v. American Wyott Corporation,* 11 P.3d 928 (Wyo.2000).

[¶ 22]  The required elements of a promissory estoppel claim are: The existence of a clear and definite agreement; proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and the equities support the enforcement of the agreement. *Loghry v. Unicover Corporation,* 927 P.2d 706, 710 (Wyo.1996). Whether elements one and two exist are questions for the finder of fact. *Michie v. Board of Trustees of Carbon County School District No. 1,* 847 P.2d 1006, 1009 (Wyo.1993). Whether element three is satisfied is decided as a matter of law by the court. *Id.* Along with demonstrating the existence of a promise, a plaintiff must also establish "action or forbearance of a definite and substantial character" to satisfy element two. *Worley,* 1 P.3d at 624 (quoting *Loghry,* 927 P.2d at 710). We believe there is adequate evidence in the record to create a question of fact; therefore, the district court's summary judgment on this issue is reversed.

## CONCLUSION

[¶ 23] For the reasons set out above, we reverse the summary judgment order, and the case is remanded to the district court for further proceedings consistent with this opinion.