# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 118

### OCTOBER TERM, A.D. 2016

### December 13, 2016

JACKMAN CONSTRUCTION, INC., a
Wyoming Corporation,

Appellant
(Defendant),

v.                                                          S-16-0020

ROCK SPRINGS WINNELSON CO.,
INC.,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Nena James, Judge

*Representing Appellant:*
    Clark Stith, Rock Springs, Wyoming.

*Representing Appellee:*
    Danielle M. Mathey of Mathey Law Office, P.C., Green River, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ**, Justice.

[¶1]    Appellee Rock Springs Winnelson Co. (Winnelson) sued Appellant Jackman Construction, Inc. (Jackman) for nonpayment of materials supplied for the Southside Improvements Project in Green River, Wyoming (project).  Jackman counterclaimed on various legal theories, including promissory estoppel, to recover the amount it paid in excess of Winnelson's subcontractor bid.  After a bench trial, the district court generally found in favor of Winnelson and denied Jackman's counterclaims.

[¶2]    Jackman asserts the district court erred by rejecting its promissory estoppel claim. The record contains ample evidence to support the district court's factual determinations and it did not commit any prejudicial errors of law.  We, therefore, affirm.

## ISSUES

[¶3]    Jackman presents the following issues for our review:

1.  Did the district court err by not conducting any analysis of promissory estoppel?

2.  Did the district court err by refusing to accept the stipulation of the parties that [Jackman] paid Winnelson $679,941.52 toward the [project]?

3.  Was the district court's finding that Jackman later agreed to pay higher prices than those that appeared on Winnelson's bid clearly erroneous?

Winnelson counters with these issues, which we have restated:

1.    Is Jackman barred from arguing that Winnelson's freight charges were fraudulent because the argument was not made below and/or the fraud claim was not pled with particularity?

2.    Is Jackman barred from arguing the bid expiration date was unreasonable because the argument was not made below?

3.    Did the district court err by deciding that Jackman had failed to prove the elements of promissory estoppel?

4.    Was any error in refusing to recognize the parties' stipulation harmless?

1

5.     Are W.R.A.P. 10.05 sanctions appropriate?

**FACTS**

[¶4]   On May 4, 2010, Jackman was the successful bidder on a project to install new water lines and a pump station for the City of Green River.  Prior to the general contract bid letting, Winnelson submitted a bid to supply plumbing materials for the job (Bid #1) to several general contractors, including Jackman.  There were several bid schedules covering materials for different aspects of the project.  Winnelson's bid of $550,247.81 was for most of the materials, but it did not include materials for three of the bid schedules.  Winnelson's fax cover sheet which accompanied Bid #1 notified the general contractors that "All FBE fittings special order contractor to verify [quantities] & items as most fittings are 4-6 weeks delivery.  Nonreturnable after order, any questions please call."  Winnelson's bid also had a thirty day expiration date which, depending on the particular bid schedule, was either May 16 or May 19, 2010.

[¶5]   A couple of days before the bid letting, Jackman's project manager, Heather Glenn, requested that Winnelson prepare a separate quote just for the pipe to be used on the project.  That same pipe had been included in Winnelson's Bid #1.  Winnelson provided the pipe bid which was $254,821.70 (Bid #2).  That bid was conditioned for "immediate acceptance" and the prices were applicable "only if all items listed [were] ordered."

[¶6]   Jackman never executed a written contract with Winnelson to supply the materials or specifically notified Winnelson that it was accepting Bid #1 or Bid #2.  Jackman owner, Lynn Jackman, testified that he accepted the bid for all of the project materials on the day after the bid letting by telling Pete Frullo, the president of Winnelson, to "get [his] submittals in order."  A submittal is a document in which the supplier provides information about the specific materials it intends to provide to meet the project specifications.  For this project, submittals had to be approved by the project engineer prior to the general contractor ordering the materials.  Mr. Jackman did not indicate whether Winnelson should get "submittals in order" for Bid #1 or Bid #2.

[¶7]   Despite Mr. Jackman's statement, the submittal process was not followed in an orderly fashion.  Mr. Jackman ordered the pipe (corresponding to Bid #2) on May 14, 2010, without first having a submittal approved by the project engineer.  Mr. Jackman did not comply with the condition in Bid #1 requiring it to verify the items and quantities of fittings and parts.  Without that information, Winnelson could not prepare submittals or order the other materials.   Instead, Ms. Glenn, on behalf of Jackman, ordered materials piecemeal during the course of the project, long after Bid #1 had already expired, without ever providing Winnelson a complete set of approved submittals.

2

[¶8]   Winnelson honored its bid prices for the pipe, but on the other items it charged Jackman the price in effect at the time of the order.  Winnelson also added freight charges to its invoices, often including charges for expedited delivery when Jackman needed the items quickly.  The freight charges were not always listed separately on the invoices, and Mr. Frullo explained that Ms. Glenn agreed to pay additional freight but asked that it be incorporated into the price of the materials.

[¶9]   Toward the end of the job, Jackman had trouble paying Winnelson's invoices.  Some large checks were returned for insufficient funds, and Winnelson began to require payment before it would provide materials to Jackman.  Eventually, Jackman stopped paying altogether, and Winnelson refused to provide any more materials.  Jackman obtained the rest of the materials it needed for the job from another supplier.

[¶10]  Winnelson filed suit in circuit court against Jackman[1] for its failure to pay invoices totaling $21,705.31, which included principal and service charges.  Jackman counterclaimed for breach of contract, promissory estoppel and negligent misrepresentation[2] and, in its amended counterclaim, requested damages of more than $50,000.  Jackman asserted that Bid #1 was enforceable based on promissory estoppel, and that Winnelson breached the terms of Bid #1 by charging more for parts than the bid prices.  Because the amount claimed by Jackman exceeded the circuit court's jurisdiction, the matter was transferred to district court.

[¶11]  The district court conducted a one-day bench trial and issued findings of fact and conclusions of law under W.R.C.P. 52, granting judgment in favor of Winnelson on the outstanding principal.  The district court denied Winnelson's claim for unpaid service charges because the language on Winnelson's invoice form indicated the charge was discretionary and did not specify the amount to be charged or the method of calculating it.

[¶12]  The district court denied Jackman's counterclaims.  It ruled that, to be enforceable under the statute of frauds, a contract for the project materials had to be in writing because it involved a sale of goods for a price of $500 or more.  *See* Wyo. Stat. Ann. § 34.1-2-201 (LexisNexis 2015).  Given Jackman did not accept Bid #1 in writing prior to the expiration dates, the court concluded no valid contract based upon the bid was formed.  Instead, the district court found that the parties contracted under Bid #2 when Jackman ordered the pipe and entered into a series of smaller contracts when other materials were ordered by Ms. Glenn.  The district court also rejected Jackman's

---

[1] Jackman's bonding company, North American Specialty Insurance Co., was also named as a defendant in the lawsuit; however, it did not participate in this appeal.

[2] After trial, Jackman moved to amend its counterclaim to conform to the trial evidence by adding a claim for intentional misrepresentation.  The district court stated in its decision that Jackman had provided no evidence to prove that Winnelson committed negligent or intentional misrepresentation.

alternative claims based upon promissory estoppel, unjust enrichment and negligent or intentional misrepresentation. Jackman filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶13] When the district court conducts a bench trial and issues findings of fact and conclusion of law pursuant to Rule 52, we review its factual findings for clear error and its conclusions of law *de novo. Wimer v. Cook,* 2016 WY 29, ¶ 9, 369 P.3d 210, 215 (Wyo. 2016).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
>
> " 'We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.' "

*Shriners Hospitals for Children v. First Northern Bank of Wyo.,* 2016 WY 51, ¶ 27, 373 P.3d 392, 403 (Wyo. 2016), quoting *Wimer,* ¶ 9, 369 P.3d at 215 (citations omitted).

## DISCUSSION

### 1. *Promissory Estoppel*

[¶14] The primary issue in Jackman's appeal is whether the district court erred by denying its promissory estoppel claim. In its statement of the issues on appeal, Jackman complains that the district court did not conduct "any analysis of promissory estoppel." That statement is clearly incorrect as the district court made the following conclusion of law:

> 14. As an alternative theory of recovery available only when no contract exists, Jackman's counterclaim under

the equitable theory of promissory estoppel was not supported by sufficient evidence to prove the existence of a clear and definite promise which Winnelson should reasonably expect to induce action by Jackman, nor was there sufficient evidence to prove that Jackman acted to its detriment in reasonable reliance on any such promise. Jackman's counterclaim based on promissory estoppel fails.

[¶15] Promissory estoppel is an equitable remedy that applies when a party detrimentally relies upon a promise that does not rise to the level of a formal contract. *Michie v. Board of Trustees of Carbon County School Dist. No. 1,* 847 P.2d 1006, 1009 (Wyo. 1993). Promissory estoppel may be applied in the construction context to make a bid enforceable. *See generally*, *Four Nines Gold, Inc. v. 71 Constr., Inc.,* 809 P.2d 236, 239 (Wyo. 1991). The principle also can be applied to enforce an oral promise for a sale of goods over $500 even though the statute of frauds typically would make such an agreement unenforceable. Section 34.1-2-201; *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 818-19 (Wyo. 1992).

[¶16] All of the elements of promissory estoppel have to be met to allow recovery.

The elements of promissory estoppel are:

"(1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise."

*City of Powell v. Busboom,* 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo.2002) (*quoting Roussalis [v. Wyoming Med. Ctr., Inc.,* 4 P.3d 209,] 253 [(Wyo.2000)]). The party asserting promissory estoppel has the burden of establishing each element under a burden of strict proof. *Busboom,* 2002 WY 58, ¶ 8, 44 P.3d at 66. The first two elements are questions of fact for the fact-finder; the third element is a question of law for the court. *Id.; Loya v. Wyoming Partners of Jackson Hole, Inc.,* 2001 WY 124, ¶ 22, 35 P.3d 1246, 1254 (Wyo.2001). *Birt v. Wells Fargo Home Mortg., Inc.,* 2003 WY 102, ¶ 26, 75 P.3d 640, 651 (Wyo.2003).

*Singer v. Lajaunie,* 2014 WY 159, ¶ 20, 339 P.3d 277, 283 (Wyo. 2014).

5

[¶17] The district court ruled that Jackman did not meet its burden of proving that Winnelson's Bid #1 was a clear and definite promise which it should have reasonably expected to induce action by Jackman. It also concluded that Jackman did not prove it acted to its detriment in reasonable reliance on any such promise. In other words, the district court concluded that Jackman did not prove the first two elements of promissory estoppel. Jackman claims that, when Winnelson submitted Bid #1, it made a clear and definite promise to supply the materials at the prices included in the bid. It asserts that Winnelson should have reasonably expected Jackman to rely upon those prices when submitting its overall bid to the City of Green River, and it did rely on the promise to its detriment by using those prices, which were lower than those actually charged by Winnelson, in its bid.

[¶18] In the absence of a contract, a subcontractor may be bound, under promissory estoppel, to honor his bid to a general contractor. However, a bid is only a "'promise to perform **on such conditions** as were stated expressly or by implication therein or annexed thereto by operation of law.'" *Alaska Bussell Elec. Co. v. Vern Hickel Constr. Co.,* 688 P.2d 576, 580 (Alaska 1984), quoting *Drennan v. Star Paving Co.,* 333 P.2d 757, 759 (Cal. 1958). Thus, the promise included in a subcontractor's bid is expressly subject to its conditions, and a general contractor cannot reasonably rely upon a subcontractor's bid if the general contractor does not satisfy those conditions. *Drennan,* 333 P.2d at 759 (stating that the court would recognize a condition expressly stated or clearly implied by the bid).

[¶19] The district court found that Winnelson submitted two separate bids to Jackman. Bid #1 was for all of the materials for the project (except those in the three missing bid schedules). Bid #2, which Winnelson submitted at Ms. Glenn's request, was for the pipe only. Soon after Jackman found out it was the low bidder on the project, it ordered the pipe. The parties, therefore, reached an agreement and performed in accordance with Bid #2.

[¶20] With regard to Bid #1, however, the trial evidence supports the district court's determination that Winnelson did not make a clear and definite promise which Jackman could have reasonably relied upon. That bid clearly expired on May 16 or 19, 2010, depending upon the individual bid schedule, and Jackman did not, in any way or at any time, manifest its intent to accept Winnelson's Bid #1 in its entirety or otherwise comply with the bid conditions. It did not provide a complete list of materials and quantities, purchase orders, a subcontract, or a notice of intent to accept the bid.

[¶21] Jackman argues that the thirty day expiration dates were not enforceable because the periods for acceptance were too short. Winnelson maintains that we should not consider Jackman's argument because it was not presented to the district court. Unless an issue is so fundamental it must be considered or it concerns matters of jurisdiction, we typically do not consider issues that were neither raised nor argued to the district court.

6

*WW Enterprises, Inc. v. City of Cheyenne,* 956 P.2d 353, 356 (Wyo. 1998), citing *Epple v. Clark,* 804 P.2d 678, 681 (Wyo. 1991). Jackman insists that it did raise the issue when it argued that the expiration date was not "commercially reasonable" and that enforcing the expiration date would make Winnelson's offer "illusory." Jackman's argument on appeal is significantly different than its argument to the district court. It certainly did not raise below the specific issue of whether the expiration dates were per se unenforceable because of their short duration. However, for the sake of completeness, we will briefly address Jackman's argument.

[¶22] Jackman relies on *Lyon Metal Products, Inc. v. Hagerman Constr. Corp.,* 181 Ind. App. 336 (Ind. Ct. App. 1979), to support its claim that short expiration periods on bids are unenforceable. Jackman's argument, however, ignores the facts and the rationale of that decision. In *Lyon*, an Indiana court of appeals held that a general contractor reasonably relied upon the subcontractor's bid for athletic lockers even though the subcontractor's bid form stated in fine print that it was subject to final approval by the subcontractor's home office and it could be withdrawn after fifteen days. *Id.* at 337. The court held that the fifteen day expiration period did not prevent the general contractor from reasonably relying on the bid for several reasons: 1) it was in fine print; 2) it was contrary to the project specifications which required bidders to keep their bids open for 120 days; and 3) the general contractor issued a letter of intent to accept the subcontractor's bid shortly after the job was awarded to it and many months prior to the subcontractor's withdrawal of the bid. *Id.* at 342.

[¶23] In the case before us, Winnelson's bid expiration dates were not in fine print; they were clearly printed at the top of each bid schedule. There was no evidence that the project specifications required bidders to keep their bids open beyond Winnelson's expiration dates, and Jackman did not issue a letter of intent or any other notice that it intended to use Winnelson as its supplier for all of the items included in Bid #1. Given the crucial differences between *Lyon* and the present case, that decision does not stand for the broad general principle stated by Jackman that "[u]nreasonably early subcontractor bid expiration dates are not enforceable by the subcontractor."

[¶24] Jackman also argues that *Double AA Builders, Ltd. v. Grand State Constr., LLC,* 210 Ariz. 503, 114 P.3d 835 (Ariz. Ct. App. 2005), supports its promissory estoppel claim. In *Double AA* a subcontractor submitted a bid with a thirty day price guarantee and the general contractor used it in its total bid to the owner. The general contractor got the job and, **within the thirty day period**, sent a subcontract for the subcontractor to execute. The subcontractor refused to sign the subcontract or perform in accordance with its bid, and the general contractor was required to obtain the services of another subcontractor. *Id.* at 837. In a subsequent suit, the general contractor recovered, under promissory estoppel, the difference it had to pay between the subcontractor's bid and the replacement. *Id.* at 844.

[¶25] *Double AA* addressed a much different situation than the case at bar. Unlike the general contractor in *Double AA,* Jackman did not make any attempt to comply with the terms of Bid #1 prior to the expiration of the bid. Indeed, by recognizing that a general contractor can rely upon and enforce a bid only by meeting its conditions, *Double AA* supports Winnelson's position, not Jackman's.

[¶26] Winnelson's bid documents clearly stated that the prices would expire on May 16 and 19, 2010. Mr. Frullo testified that the expiration dates were necessary because prices fluctuate. Winnelson based its expiration dates upon the time that the manufacturers agreed to lock in prices for the materials. Jackman asserts that the expiration period was too short because it did not receive official notice that it had been awarded the project from the City of Green River until after Bid #1 expired. That argument is not persuasive in light of the facts that Jackman knew it was the low bidder shortly after the bid letting, it actually ordered the pipe prior to receiving the notice of award, and it made no effort to secure the bid prices prior to the expiration dates.

[¶27] If Jackman wanted to secure the prices in Bid #1, it needed to comply with the bid conditions. It did not provide a complete list of items or quantities as required by Winnelson's bid form or otherwise indicate that it intended to use Winnelson as its supplier for all of the remaining bid materials at any time, much less before the bid expired. Although Mr. Jackman testified that he accepted Bid #1 when he told Mr. Frullo to "get his submittals together," the company's other actions were not consistent with that intent. Jackman's submittal process was disorganized and incomplete. In fact, Mr. Jackman ordered the pipe without following the submittal process.[3]

[¶28] Jackman's other actions in ordering materials from Winnelson did not indicate that it intended to accept Bid #1 in accordance with its express conditions. Mr. Frullo testified that, instead of coordinating with Winnelson to order materials for the whole project, Ms. Glenn would order items piecemeal, often coming into the store "in a panic" needing certain items right away. As Winnelson's bid stated, many of the fittings were special order so they typically would not be delivered for several weeks after they were ordered. Mr. Frullo testified that, to expedite receipt of the items, Ms. Glenn agreed to pay additional costs. Jackman's conduct was entirely inconsistent with its argument that it reasonably relied upon Bid #1. Consequently, the district court properly concluded that Jackman did not meet its burden of proving the elements of promissory estoppel.

### 2. Fraud

---

[3] Jackman makes a statement in its brief that we do not understand: "As Winnelson provided no submittals at all for the pipe, . . . a reasonable person in Winnelson's position would know that he should prepare the submittals for the other items in the bid." The fact that there were no submittals for the pipe does not naturally lead to the conclusion that Winnelson reasonably should have known it should prepare submittals for the other materials. To the contrary, it more likely leads to the opposite conclusion.

[¶29] Jackman asserts that the price increases and/or freight charges in Winnelson's invoices were intentionally false or fraudulent. Winnelson maintains that Jackman did not properly present its fraud claim to the district court. "Actions sounding in fraud must be pled with particularity and proved by clear and convincing evidence." *Bitker v. First Nat'l Bank in Evanston,* 2004 WY 114, ¶ 9, 98 P.3d 853, 855 (Wyo. 2004), citing *Lee v. LPP Mortgage, Ltd.,* 2003 WY 92, ¶ 11, 74 P.3d 152, 158 (Wyo. 2003). The pleading requirement is found in W.R.C.P. 9: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See, e.g., Excel Constr. Inc. v. HKM Engineering, Inc.,* 2010 WY 34, ¶¶ 33-36, 228 P.3d 40, 48-49 (Wyo. 2010). Jackman's counterclaims did not plead fraud at all, much less with particularity. Its failure to comply with Rule 9 is fatal to its fraud claim.

[¶30] Furthermore, Jackman did not prove by clear and convincing evidence that Winnelson's actions were intentionally false or fraudulent. As discussed above, Winnelson conditioned its bid and Jackman did not satisfy the conditions; consequently, Winnelson was not bound by the bid prices. When Ms. Glenn ordered the materials, Winnelson charged the current prices for the materials and included the additional shipping charges. The evidence does not show that Winnelson's charges to Jackman were different than the prices it charged to its other customers at that time. There is no evidence, much less clear and convincing evidence, to support Jackman's claim that Winnelson's charges were fraudulent or intentionally false.

### 3. *District Court's Rejection of Parties' Stipulation*

[¶31] Jackman maintains that the district court erred by rejecting the parties' stipulation as to the amount Jackman paid Winnelson. At the beginning of the trial, the parties stated they had agreed that Jackman paid Winnelson $679,941.52 for the project materials and were stipulating to that fact. Nevertheless, the district court found:

> 16. The parties stipulated that Jackman paid Winnelson $679,941.52 for materials it ordered during the time period encompassed by the South Side Project; however, due to unexplained inaccuracies in exhibits D and H, the trial evidence failed to establish this amount was exclusively for the South Side Project.

[¶32] A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter or incident thereto." 73 Am. Jur. 2d *Stipulations* ¶ 1 (2016). Parties may stipulate to certain facts to avoid the delay, trouble and expense associated with proving them, and courts encourage stipulations to narrow issues to be proven at trial and promote judicial economy. *Id.* A stipulation "prevents an independent examination by a judicial officer or body with respect to the matters stipulated." 73 Am. Jur. 2d *Stipulations* § 17 (2016). Consequently,

9

stipulations of facts are ordinarily "controlling and conclusive and courts are bound to enforce them, and they have no power to make findings contrary to the terms of the stipulation." *Id.* *See also Watkins v. Lake Charles Memorial Hosp.*, 144 So. 3d 944, 957 (La. 2014) ("A stipulation has the effect of a judicial admission or confession, which binds all parties and the court."). In *Stringer v. Miller* (*In re Stringer's Est.*), 343 P.2d 508, 512 (Wyo. 1959), this Court admonished the trial court for ignoring a stipulation. We stated that "[t]he court was not privileged to ignore the stipulation of the parties" as to which will was valid. *Id.*

[¶33] The district court was, therefore, obligated to accept the parties' stipulation as to the amount Jackman paid Winnelson on the Green River project, without proof of that factual matter. Just as in *Stringer*, the trial court was not "privileged to ignore the stipulation of the parties." The trial court should not have considered whether the evidence supported the stipulation, and should not have concluded that the stipulation was not supported by the evidence.

[¶34] That error does not, however, change the outcome of this case. The district court properly ruled that Jackman did not prove Winnelson was obligated to honor the prices in Bid #1 under its promissory estoppel theory. It was, therefore, appropriate for Winnelson to charge the current prices for the materials. The result of this case is not affected by the fact that the amount paid by Jackman for the materials totaled more than the bid amount. Consequently, the district court's erroneous refusal to accept the parties' stipulation was harmless and we disregard it under W.R.C.P. 61 and W.R.A.P. 9.04.

### 4. District Court's Finding that Jackman Agreed to Pay Current Prices of the Materials

[¶35] Jackman claims the following district court finding was clearly erroneous:

> 45. When placing orders, Jackman agreed to pay prices in effect at the time it ordered South Side Project materials even though some of those prices differed from the original bid prices.

Jackman's argument relies upon a conclusion that Bid #1 was enforceable. As stated above, we agree with the district court that Jackman did not satisfy the bid conditions and Bid #1 was not, therefore, enforceable.

[¶36] When Jackman ordered materials after the bid expired, Winnelson invoiced them at the current prices with additional freight charges when warranted. Jackman paid the invoiced charges without complaint until late in the project. Mr. Frullo testified that Ms. Glenn was aware that Winnelson was not charging in accordance with Bid #1 when she ordered the materials:

10

> Q. After that May 16th or May 19th [expiration] date, what happens with the order in terms of pricing?
>
> A. Then they are going to go to the current cost of them.
>
> Q. When that current cost includes emergency shipping, what happens with the emergency shipping?
>
> A. That would be added.
>
> Q. Is that something that you informed Jackman Construction of?
>
> A. Heather [Glenn] was very well aware of it.

[¶37] Mr. Frullo also explained the disorganized nature of Ms. Glenn's ordering process and her directions with regard to the higher shipping costs:

> Q. Who placed the orders?
>
> A. Heather [Glenn].
>
> Q. How did she place the orders?
>
> A. She would call up and ask me if I had any of these fittings, which on my cover sheet it states that they were like four to six weeks out because they . . . had special coatings on them. . . . We would have to order them, it would take a time delay to get them to us, deliver them to the job site. There was no way I had a complete list from what she wanted me to order off of our quotes at any one time to order the completed job.
>
> Q. What did she give you?
>
> A. She would just verbally come in, in a panic usually, with a set of plans and tell me what she wanted to order.
>
> Q. How much time did you have to supply these items?
>
> A. That was part of the problem is they were all special coated so it would take – it's roughly three to four weeks to get parts.
>
> Q. Did that have an effect on anything else related to the price like shipping[?]
>
> A. . . . Yes, because if we did not make whatever. . . [the manufacturers'] fitting or dollar volume was, we would be responsible for freight.
>
> Q. What do you [do] when you are responsible for freight in terms of the prices?

11

A. What [Heather] told me on this is she told me she would include it in the fittings and she would take care of it.

. . . .

Q. So Heather told you to include the price of the freight into the fittings that were ordered and she would take care of it?

A. Correct, yes. She did that on numerous occasions.

[¶38] The reasonable inference from the trial evidence was that, when Ms. Glenn ordered materials after the bid expired, she was aware that Jackman would have to pay the current prices for the items and higher shipping charges. She specifically directed Winnelson to include the additional shipping charges in the costs of the fittings. The increased costs were clearly shown on Winnelson's invoices, which Jackman paid throughout most of the project without objection. On this record, the district court's finding that "Jackman agreed to pay prices in effect at the time it ordered [project] materials even though some of those prices differed from the original bid prices" was not clearly erroneous.

### 5. *W.R.A.P. 10.05 Sanctions*

[¶39] Winnelson requests that we sanction Jackman under W.R.A.P. 10.05(b) by ordering it to pay Winnelson's attorney fees. The rule states in relevant part:

> If the court certifies, whether in the opinion or upon motion, there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case.

*Id.* In general, we are reluctant to order sanctions under Rule 10.05 and will do so only in rare circumstances. *Grynberg v. L & R Exploration Venture,* 2011 WY 134, ¶ 30, 261 P.3d 731, 739 (Wyo. 2011); *Amen, Inc. v. Barnard,* 938 P.2d 855, 858 (Wyo. 1997). Jackman's argument and brief certainly are wanting in several respects. However, given it established that the district court's refusal to accept the parties' stipulation was erroneous (though harmless), this is not one of those rare cases where this Court certifies there was no reasonable cause for appeal. We, therefore, deny Winnelson's request for Rule 10.05 sanctions.

[¶40] Affirmed.