# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 17

OCTOBER TERM, A.D. 2016

*February 22, 2017*

RENEE MICHELLE TRACY, n/k/a
RENEE MICHELLE BUCHLI

**Appellant**
**(Petitioner),**

**v.**                                                    S-16-0126

SHANE ELWOOD TRACY,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
    Stacy M. Kirven, Barney & Graham, LLC, Sheridan Wyoming

*Representing Appellee:*
    Brendon E. Kerns, Kerns Law Office, LLC, Sheridan, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Shane Tracy (Father) successfully petitioned for modification of the child custody provisions of his divorce decree and thereby obtained custody of his young son and daughter.[1]    His ex-wife, Renee Buchli (Mother), appeals from the district court's modification order, as well as from a temporary order entered early in the litigation. We affirm.

## ISSUES

[¶2]    Mother raises the following four issues on appeal:

> 1. Did the district court err when six months prior to trial, it granted Father temporary physical custody of the children upon offers of proof and argument, rather than after holding a full evidentiary hearing?
>
> 2. Did the court abuse its discretion by allowing the children's counselor to testify as an expert witness at trial even though Father had not made a disclosure of that witness's proposed testimony which complied with all requirements of the Wyoming Rules of Civil Procedure?
>
> 3. Did the district court abuse its discretion in ultimately awarding custody of the children to Father after a full evidentiary hearing?
>
> 4. Did the court violate Mother's constitutional rights to interstate travel and to associate with her children when it modified custody in favor of Father?

## FACTS

[¶3]    The parties divorced on July 18, 2013. By the terms of a stipulated decree of divorce, Mother was granted custody of the children, subject to Father's right to liberal visitation. The decree also provided that the children were to attend Meadowlark School in Sheridan to take advantage of superior educational opportunities at that facility.

[¶4]    Later Mother became involved with the boyfriend she eventually married, and the two began living together in August of 2014. From that point on, the boyfriend

---

[1] The son, BJT, was ten years old at the time of the custody trial and the daughter, SST, was five years old.

1

commuted daily from Sheridan to his job at a Gillette area coal mine. On April 10, 2015, Mother advised Father by letter that she intended to move to Gillette with the children in August of that year. Father responded on May 27 by filing a petition to modify the custody, visitation, and support provisions of the parties' divorce decree, as well as a motion for temporary custody. Mother's answer and counterclaim agreed that her planned move constituted a sufficient material change of circumstances to reopen the divorce decree.[2]

[¶5] Before and after the move, the children began to exhibit serious emotional and behavioral problems. Ten-year-old BJT began experiencing persistent bouts of uncontrollable crying, and five-year-old SST began to uncharacteristically order adults around and otherwise aggressively attempt to control them. Mother consequently enrolled the children in counseling with Deiadra Smidt. BJT began twice weekly sessions in June of 2015, and SST began therapy the following month.

[¶6] The district court issued an order setting a hearing on the motion for temporary custody for August 7, 2015. As the transcript of that hearing establishes, school would start a few weeks after that hearing, and it was therefore important to address the situation one way or another within a short time. The same order set a one-day bench trial on the motion for February 5, 2016, and it set other deadlines to assure that the case was ready for trial on that date.

[¶7] Approximately one week after that order issued, Ms. Smidt copied Mother, Father, and their attorneys with a letter summarizing her work to date with BJT. She reported that the boy's grave state of conflict over the pending move threatened to make him progressively more sad, depressed, fearful, and anxious unless he continued with therapy to help him develop coping skills to respond to the pressures he was feeling.

[¶8] At the beginning of the temporary custody hearing, the district court reminded the parties and counsel that because less than an hour had been set aside for the proceeding, it did not expect to hear any testimony. It would instead hear only legal arguments and offers of proof from counsel as to facts currently at their disposal. Neither counsel objected to proceeding in that manner, which we deduce is the practice in the Fourth Judicial District.[3] The hearing was a free-ranging one, with both parties and their

---

[2] Her contemporaneously filed response to Father's motion for temporary custody apparently adopted the same view but claimed that, at that point, he had not shown the change warranted a custody modification, but only a change in visitation.

[3] At one point, Mother's counsel did comment that the allotted time was too short for her to fully discuss the ten factors governing custody determinations in Wyo. Stat. Ann. § 20-2-201. The court agreed and stated that its usual practice was to wait until a full hearing could be held, but that this case involved cross petitions for changes in custody and visitation (thus establishing a material change of circumstances), and that a decision had to be made quickly.

attorneys contributing, although the clients were not under oath. The court asked a number of questions of counsel and the parents.

[¶9]    Father's attorney focused on the need to keep the children, particularly BJT, in counseling with Smidt and in the school where they were comfortable and successful and had friends. Counsel also noted that Father's mother and extended family would help him attend to the children's needs when he had to work. Finally, counsel reported that Mother and her boyfriend intended to live in a toy hauler[4] trailer with the children until they could save enough money to build a house in Gillette.

[¶10]  Before building the house, Mother and her boyfriend would need to construct a road and provide water, waste facilities, and electricity for the property on which the house was to be built. When Mother moved with the children to Gillette on August 1, 2015, shortly before the temporary order hearing, the toy hauler had to be parked in a recreational vehicle park populated mostly by transient workers in the oil and mineral industries because of the lack of these amenities. In addition, Mother had at that point decided not to work so that she could stay home with the children when they were not in school.

[¶11]  The court expressed concern over Mother's somewhat unsettled and provisional planning for the future. It had concerns that Mother had placed her financial welfare, and to some extent that of the children, in her boyfriend Mr. Buchli's hands, although they were not married. However, it was far more concerned that the children be given the best chance at resolving the serious emotional problems caused by the move. It concluded that interest would best be served by leaving them where they could attend Meadowlark Elementary School, and by continuing the therapeutic relationship they had with Ms. Smidt until a trial[5] of the modification petition could be held.

[¶12]  Consequently, the court granted Father's request for temporary custody of the children from the start of the new school year until the upcoming trial in February of 2016. The court made it clear that it was normally "very reluctant" to modify custody on a temporary basis, but that it would do so under these unique circumstances. It also indicated that the order was indeed temporary, and that it was just intended to maintain a stable status quo with regard to schooling and counseling until it could hold a full evidentiary hearing. The court also adjusted visitation and child support to accommodate the temporary arrangement. A written order followed.[6]

---

[4] A toy hauler is a sort of camper trailer. The portion toward the hitch contains the amenities of the more usual sort of camper, while the rear portion can accommodate motorsports equipment such as all-terrain vehicles and motorcycles. BJT told Smidt that he and his sister shared the 60-square-foot rear portion.
[5] The district court called the final evidentiary proceeding a trial, while we have sometimes called it an evidentiary hearing in this opinion. There is no difference between these terms.
[6] Although the heading of the order indicated that it was stipulated, language in the body of the order indicated that Mother's counsel only approved it as to form.

[¶13] On October 23, 2015, Father designated Smidt as an expert witness. The disclosure provided as follows:

> Ms. Smidt, MS, LPC [Wyoming license no.], provides counseling services for the minor children B.J.T. and S.S.T. She will testify to the reasons for the children's emotional and psychological issues and struggles. She will testify to what tissues [sic] the children have been diagnosed with. She will testify to what is in the children's best interest concerning their emotional, psychological and coping needs.

[¶14] On November 16, 2015, Mother gave notice that she would depose Smidt on December 4. A week later, Mother served Smidt with a subpoena duces tecum which instructed her to bring her counseling records relating to the children and a curriculum vitae to the deposition. A subpoena was issued because Smidt contended that she could not otherwise lawfully voluntarily release the children's mental health records, even to their parents. In any event, although Mother's attorney later cancelled the deposition, Smidt provided both parties with complete records on both children, as well as her curriculum vitae, evidently pursuant to the subpoena to the deposition.

[¶15] On January 4, 2016, Mother objected to Father's expert designation of Smidt because it did not include the information required by W.R.C.P. 26(a)(2)(B(i),[7] and she asked the district court to sanction Father for his alleged noncompliance by not allowing Smidt to testify at the modification hearing. After a January 29 hearing on that objection, the court declined Mother's request due to the importance of Smidt's testimony to its evaluation of the best interests of the children, but it did limit her testimony to fleshing out the contents of her records.

[¶16] As was the case with the temporary custody hearing, concerns about the children's psychological welfare dominated the trial. Smidt described BJT as being heavily burdened by internal conflicts and at risk for developing substantially increased anxiety and depression unless he received treatment aimed at developing coping skills to deal with the feelings and perceptions he had revealed to her. He was particularly sad and worried about the prospect of leaving both sides of his extended family behind in Sheridan, he felt that people did not listen to his concerns, and he wished his mother would focus more attention on him. Although he got along well with Mr. Buchli, he felt that Buchli was taking his mother and the security of living in Sheridan away from him, and that his mother had chosen her boyfriend over him. He could not understand why Buchli could not live in the trailer in Gillette and travel back and forth to see his mother,

---

[7] Those requirements will be set out below in our discussion of Mother's appellate claim on this issue.

4

and he was quite worried that he would have to move again if his mother and Mr. Buchli married and they then had to move again if he changed jobs.[8]

[¶17] Although SST also appeared to suffer from a high degree of anxiety and depression relating to the prospect of moving to Gillette, in her they manifested in an insistence on controlling her environment and the people within it. Allowing her to act out in that manner in a therapeutic environment would, in Smidt's opinion, reduce her anxiety. As was the case with her brother, SST was upset by what she perceived as her mother's preference for her boyfriend over her. The child related to Smidt that she woke up one night in Mother's house and went to her mother's bedroom to be comforted. After finding the door locked, she cried herself to sleep on a couch.

[¶18] Smidt concluded that Father's household and circumstances provided more of the stability, security, and predictability the children needed than Mother's home did. She also recommended that the children continue counseling at the present frequency until they improved.

[¶19] On February 17, 2016, the district court entered an extensive and thorough order granting custody to Father. It rated Mother and Father as equal under seven of the ten non-exclusive factors it was required to consider by Wyo. Stat. Ann. § 20-2-201(a) when determining the best interest of the children.[9] As to the remaining factors, the court concluded that Father had a better relationship with the children because of evidence that Mother did not seem to realize how traumatic the move had been for BJT. It also found Father to be relatively more competent and fit because he had proven more willing and able to provide the structure, stability, and predictability needed to improve the children's mental health struggles. Finally, as to other relevant factors, the court viewed mother's new husband as the only person whose lifestyle benefitted significantly from the decision to move, which led it to doubt that Mother had the best interest of her children in mind when she decided to move.

[¶20] Mother timely perfected her appeal from that order.

---

[8] Within a few months after the temporary custody hearing, Mother married Mr. Buchli and got a new job, and the couple moved to a house outside of Moorcroft.

[9] Those seven factors include the parents' ability to provide adequate care, their willingness to accept all responsibilities of parenting, their ability to improve their relationship and communication with the children and each other, their ability and willingness to respect the privacy of the other and refrain from interfering with the other's care of the children, the distance between their homes, and their current physical and mental ability to care for each child.

**DISCUSSION**

**The Temporary Modification Hearing**

[¶21]  Mother concedes that a district court has jurisdiction to reopen an existing child custody, visitation, and support order upon a showing by either parent of a material change in circumstances after the entry of that order pursuant to Wyo. Stat. Ann. § 20-2-204(c).  She likewise concedes, as we have noted above, that both she and Father went into the temporary modification hearing agreeing that her planned move to Gillette constituted a material change that would justify modification of one or more of the custody, visitation, and support provisions of their divorce decree.[10]  Finally, she indicates she knew beforehand that the purpose of the temporary modification hearing was to allow the court to decide whether to enter such an order, and that it was to be a non-evidentiary hearing which would last for no more than an hour.

[¶22]  Despite her acquiescence to those terms, Mother now asserts that even if the district court could temporarily change custody in the best interest of the children until the custody trial took place, it had to address the ten factors set out in § 20-2-201(a), which we briefly touched on above, and that it could issue no temporary order without a full evidentiary hearing.  We generally do not consider issues not presented to the district court unless they are so fundamental they must be considered, or if they concern matters of jurisdiction.  *Jackman Constr., Inc. v. Rock Springs Winnelson Co.,* 2016 WY 118, ¶ 21, 385 P.3d 311, 317 (Wyo. 2016).

[¶23]  Although it is a close question, we will consider these claims to be sufficiently fundamental, because of the right of familial association involved.  *Interest of RAA*, 2016 WY 117, ¶ 11, 384 P.3d 1156, 1159 (Wyo. 2016) (right to associate with one's family is fundamental) (quoting *In re HLL*, 2016 WY 43, ¶ 39, 372 P.3d 185, 193 (Wyo. 2016), which in turn quotes *In re ARW*, 2015 WY 25, ¶ 21, 343 P.3d 407, 413 (Wyo. 2015)).

[¶24]  Although Mother has not directly challenged the district court's ability to enter a temporary order in cases such as this, her claim that it could only do so after a full evidentiary hearing may amount to the same thing.  We will therefore consider the district court's power to enter temporary orders, as well as the kind of hearing required.  Wyo. Stat. Ann. § 20-2-112(b) provides that on the application of either party to a divorce proceeding, "the court may make such order concerning the care and custody of the minor children of the parties and their suitable maintenance during the pendency of the action as is proper and necessary[.]"  Although it is possible to read that provision as

---

[10] Mother claimed that she only agreed that there was a material change of circumstances which would justify a change of visitation, not custody.  We do not find that claim convincing – it seems like a transparent attempt to limit the scope of the modification hearing to suit her plans.  In any event, we agree with the district court that the planned move to Gillette and the consequences for the children constituted a material change of circumstances not anticipated by the original divorce decree.

pertaining only to the original divorce proceedings and not to any subsequent actions for custody modification, the statute contains no clear express limitation, and we discern no reason for the legislature to treat either type of proceeding as giving rise to a lesser need for prompt action by the district court than the other in situations like this.[11]

[¶25] Moreover, because the rules and statutes governing courts are seldom all-encompassing, courts have been held to have inherent power to take such actions as may be necessary to perform their duties, so long as the exercise of that power is a reasonable response to specific problems and needs in the fair administration of justice and it does not contradict any express rule or statute. *Dietz v. Bouldin*, __ U.S. __, __, 136 S.Ct. 1885, 1891-92, 195 L.Ed.2d 161 (2016). This Court has also held that courts have inherent equitable authority to enter custody orders, even in the absence of a statute that provides that specific authority. *See, e.g.*, *Marquiss v. Marquiss,* 837 P.2d 25, 33 n.5 (Wyo. 1992); *Urbach v. Urbach*, 52 Wyo. 207, 224-26, 73 P.2d 953, 960-61 (Wyo. 1937). Moreover, cases we have decided indicate that temporary custody orders are routinely entered during modification proceedings. *See, e.g.*, *Huckfeldt v. Huckfeldt,* 463 P.2d 927 (Wyo. 1970); *Kappen v. Kappen,* 2015 WY 3, 341 P.3d 377 (Wyo. 2015).

[¶26] Secondary authorities also recognize that courts have the power to enter temporary custody orders when to do so is in the best interests of the child. 2 Jeff Atkinson, *Modern Child Custody Practice* § 12-20 (2d ed. 2014) (brief temporary orders may minimize disruption to a child that might come from a change of custody after a full hearing); 24A Am. Jur. 2d *Divorce and Separation* § 857 (2008) ("A court may make a temporary change of custody when considering an application to change it permanently.").[12]

[¶27] The fact that such an inherent power exists does not mean that it is appropriate to use it in every case. Courts should exercise their inherent power with restraint and discretion so as to avoid sacrificing one vital interest for another. *Dietz,* 136 S.Ct. at 1893. These situations require a delicate touch. If a court cannot act quickly to temporarily change custody in the best interests of children, there is a risk that the custodial parent will take action that might be harmful to a child before a full evidentiary hearing can be held. The ability to do so also positions the custodial parent to argue at trial that, having moved a child to a new home and school, it would be too disruptive to change custody and move the child back.

---

[11] The term "proceeding for divorce" in § 20-2-112(a) may well be broad enough to encompass post-decree custody disputes, but we need not decide whether it is or not in light of our conclusion.
[12] This opinion does not deal with a court's authority under the Uniform Child Custody Jurisdiction and Enforcement Act, Wyo. Stat. Ann. § 20-5-201 *et. seq.* The Act governs jurisdictional conflicts between states, and contains very specific guidelines as to when the courts of a given state can act. *See, e.g.*, § 20-5-304, dealing with temporary emergency jurisdiction. Because this case does not involve an interstate child custody jurisdiction issue, the Act does not apply.

[¶28] On the other hand, if custody is changed temporarily, that decision can position the non-custodial parent to make the same argument. The record in this case indicates that the district judge was fully aware of these complications and reluctantly exercised the power to issue a temporary order in the face of an agreement that there was a material change of circumstances, Mother's then-uncertain living arrangements, the distress the children were suffering, the parties' prior agreement that the children should attend Meadowlark School in Sheridan, and the short time frame before the move took place.

[¶29] Mother also contends that a custody can only be changed temporarily after a full evidentiary hearing. Principles of procedural due process do not always require a full evidentiary hearing before depriving a citizen of a constitutionally protected property or liberty interest so long as some sort of hearing precedes the deprivation, and a full evidentiary hearing follows it within a reasonably prompt time. In such cases, the citizen is generally entitled only to predeprivation notice of the proposed deprivation, a reasonable opportunity to respond, and an opportunity to personally appear before the governmental tribunal. That process properly balances the interests of the government and all private individuals involved and minimizes any risk that the final decision following the evidentiary hearing will be erroneous. *Mathews v. Eldridge*, 424 U.S. 319, 332-35, 96 S.Ct. 893, 901-03, 47 L.Ed.2d 18 (1976); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546-47, 105 S.Ct. 1487, 1495-96, 84 L.Ed.2d 494 (1985) (in cases involving public employees terminable for cause, due process is satisfied if the employee has a pretermination opportunity to respond to allegations of wrongdoing, and a prompt post-termination administrative hearing).

[¶30] This Court has recognized that the process due at any given time must reflect the nature of the proceedings and the interests involved. *KC v. State,* 2015 WY 73, ¶ 32, 351 P.3d 236, 245 (Wyo. 2015) (when permanency plan in an abuse-neglect proceeding is changed to adoption or termination of parental rights, a parent is entitled to an evidentiary hearing, with certain limitations, on request) (citing *In re "H" Children,* 2003 WY 155, ¶ 38-39, 79 P.3d 997, 1008 (Wyo. 2003)).

[¶31] A parent's interest in continued custody of a child is by no means insignificant, but it does not require a full evidentiary hearing under these circumstances. Consistent with the district court's approach in this case, courts generally do limit the time allowed for temporary hearings and use more informal procedures than they do at a final full evidentiary custody hearing. Linda D. Elrod, *Child Custody Practice & Procedure* § 8:9 (Thomson Reuters 2016).

[¶32] The order in this case was to last only until the parties could conduct some discovery and engage in enough preparation for a custody trial which was already set. Mother was not denied access to her children for the interval between the temporary and final hearing – the district court adjusted visitation so that she might see them on a reasonable basis. The procedure utilized allowed counsel and the parties considerable

input into the temporary custody decision. Nothing in the record of the full evidentiary hearing shows that the information presented at the non-evidentiary hearing was incorrect or even disputed. The only dispute concerned the inference to be drawn from these facts – whether the move could be sufficiently detrimental to the children's welfare to justify a temporary change of custody pending a full hearing.

[¶33] Of course, what we have just said is not without limitation. It presumes that district courts will in fact provide an opportunity for a full evidentiary hearing within a reasonable time, as the district court did in this case. As one authority points out, temporary orders should be for a relatively short period of time, such as the period necessary to conduct pretrial investigations and proceed to trial. 2 *Atkinson*, *supra*, § 12-20. Appellate courts generally discourage open-ended temporary orders, and orders intended to experiment with custody arrangements. *Id*. In this case, the district court set a trial date at the same time it set the temporary order hearing, obviating any such concerns.

[¶34] There may also be situations in which the facts the parties present through offers of proof are so crucial and so in conflict that the court will need to hold an expedited evidentiary hearing to find the truth. That is not the case here.[13]

**Smidt's Testimony**

[¶35] Mother correctly notes that W.R.C.P. 26(a)(2)(B)(i) requires a party to not only disclose the identity of any proposed expert witness, but to accompany that designation— unless the trial court otherwise directs—with a written report containing a statement of all opinions to be expressed, the basis and reasons for those opinions, the data or information relied upon, any exhibits to be used by the expert, the expert's qualifications, her publications, the compensation to be paid for the study and testimony, and a listing of cases in which she has testified. However, in the present case the district court in fact "otherwise directed."

[¶36] In its July 15, 2015 scheduling order, the court ordered that Rule 26(a)(2) would apply except when the designated expert was a treating healthcare provider. It directed that in such cases no report is required from the expert "provided a complete copy of the

---

[13] Mother also complains that Father's attorney submitted a brief which the district court considered at the temporary hearing, and implies that the court should have made complete findings concerning the factors contained in § 20-2-201 for purposes of the temporary order (the court did exactly that after the full evidentiary hearing). These claimed errors do not rise to the level of being fundamental, and we will not therefore address them. *See Jackman Constr., Inc.,* ¶ 21, 385 P.3d at 317. However, with regard to findings on the factors, it is difficult to see how a court could make them when the purpose of entering the temporary order is to address a child's best interest for the short period necessary to find time for a full evidentiary hearing and to allow the parties to prepare for it.

9

treating healthcare provider's records have been provided as part of the initial disclosure or otherwise provided through discovery, and the testimony offered is within the scope of the treatment provided." The court later explained that the final phrase of that passage was intended to limit the treatment provider's testimony to her factual observations during treatment and any diagnostic opinions reflected in her treatment records.

[¶37] This distinction is consistent with W.R.C.P. 26(a)(2)(B)(i), which requires full disclosures only when an expert is "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Although the district court indicated at the hearing on the motion to prohibit Smidt from testifying that it thought its order was ambiguous, it seems clear to us. Rule 26(a)(2)(B)(ii) indicates that the disclosures it requires are part of the report or disclosure, when one is required. No report was required. *See Miller v. Beyer*, 2014 WY 84, ¶ 76, 329 P.3d 956, 978 (Wyo. 2014) (identification of physician who might testify at trial without report because physician in question was not an expert retained or employed to provide testimony).

[¶38] The court's order was also consistent with the purposes of the rule. The federal rule is identical to the current Wyoming provision to the extent that it applies to experts specially retained for the litigation and those whose job duties include providing expert witness testimony.[14] As a leading commentator points out, the rule was intended to limit disclosure requirements relating to treating professionals:

> The report required by Rule 26(b)(2)(B) must be extremely thorough, and preparing it is a time-consuming task even though counsel are allowed to assist the witness. A retained expert might not bridle at doing so, particularly for an hourly rate, but many others might. Treating physicians, for example, are often among those who will offer what might be characterized as expert testimony. It is widely known that lawyers have difficulty persuading such doctors to spend time preparing for trial, and insisting on a burdensome report before they could be called to testify might unduly interfere with the right of patients to present claims or defenses in court. It seemed clear that the treating physician example was one reason why the Advisory Committee did not impose a report requirement on all testifying experts in 1993.

---

[14] The Wyoming rule in force at the time this case was tried required a party to disclose facts, opinions, and subject matter of experts of whom a report was not required. The rule has been amended to conform to the current federal rule effective March 1, 2017, but the change is not substantive. W.R.C.P. 26(a)(2)(C); F.R.C.P. 26(a)(2)(C). The current and amended rule both allow the parties to stipulate or the court to order other disclosure requirements, which the court did in this case.

8A Charles Alan Wright et al., *Federal Practice and Procedure, Civil* § 2031.2 (3d ed. April 2016 update) (footnotes omitted).[15]

[¶39] Smidt was not specially retained for this case. Mother commendably arranged for the children to counsel with her to ease the trauma of the planned move. Like the physicians referred to in the quote above, she did not sign on to provide opinions in this case, but rather to treat the children. There was nothing unreasonable about the provision in the scheduling order – she was to testify concerning her treatment, prognosis and recommendations concerning the children. Her records provided a sufficient summary of those. Such experts should not be burdened with all of the same requirements as experts who are called in specifically to testify in a case like this.[16] The court had the power to require the parties to disclose other things it deemed pertinent, but it did not do so.[17]

[¶40] It could perhaps be argued that Father's counsel did not provide Smidt's records soon enough, because his expert disclosure was due on October 23, 2015, and the records were not provided on that date, although the rather brief disclosure was filed. The scheduling order does not actually appear to require that they be provided by that date, because it indicates that no report was required if a healthcare provider's records were provided "through discovery." Father filed his original designation timely.[18] The record shows that Mother received Smidt's complete records relating to BJT and SST, as well as

---

[15] The "difficulty persuading" a treater to provide further information should not be underestimated. Imagine a situation in which an attorney defending a personal injury case wants to present testimony from the plaintiff's treating physician concerning observations made in a medical record. The physician may be prevented from discussing the case outside a deposition or court because of physician/patient privilege. Moreover, a physician or other treater probably cannot be forced to become a retained expert, although he or she can be compelled to testify about care actually rendered.

[16] It is one thing to require a retained expert to maintain a case list, because that person will have agreed to be involved in litigation. It is quite another to require that of an expert, for example, an orthopedic surgeon, who may have had no intention of testifying when he or she treated a patient, but who may be subpoenaed to workers' compensation hearings, depositions, and trials nonetheless.

[17] We are mindful of *In re HLG*, 2016 WY 35, ¶ 23, 368 P.3d 902, 908 (Wyo. 2016). In that case, the mother did not designate a counselor as an expert witness. *Id.* ¶ 8, 368 P.3d at 904. The district court allowed the witness to testify to the content of her records, but did not allow her to interpret some of the content in them which might have crossed the treating expert line. We upheld the district court. We also expressed concern that simply producing medical or counseling records would not give adequate notice of an expert's testimony. This case is different in significant respects. Smidt was disclosed as an expert. Although Father's disclosure left something to be desired, it did identify the areas on which Smidt would testify. In *HLG*, there is no indication that the district court "otherwise directed" a different mode of disclosure as the court did here. The line between retained and treating experts is not clear, but interestingly enough, the judges in both cases found a means to limit testimony to treatment reflected in the records. Of course, an attorney disclosing an expert would be wise to provide more information, rather than less, if in doubt.

[18] Father's counsel filed a supplemental expert designation providing certain additional documents on January 7, 2016. We are unable to tell what those documents were from the record.

Smidt's curriculum vitae, by mid-December of 2015.[19] That complied with the order as we read it.

[¶41] Nevertheless, on January 4, 2016, Mother sought to prevent Smidt from testifying at trial.[20] Her primary complaint was that Smidt's records gave her little information about what opinions Smidt might offer at trial. If Mother or her attorney required elaboration beyond what was in the records to be ready for trial, Mother's counsel could have taken Smidt's deposition. In fact, a deposition was scheduled, but then cancelled.

[¶42] The district court indicated that what it meant by the language was that a disclosure should still contain a CV and a list of cases and "other things."[21] However, it declined to exclude Smidt's testimony because it felt the information she had to share about the children's mental health would be crucial to its determination of what placement might be in their best interest. It did, however, limit Smidt's testimony to her observations during her interactions with the children, Mother, and Father, and to only such opinions as were reflected in her records. This is perfectly consistent with the language of the scheduling order and Rule 26(a)(2)(B)(ii).

[¶43] If Father could be said to have failed to comply with the district court's order, as the court seemed to believe he may have, we have held that our trial courts have broad discretion to enforce their scheduling orders by sanctions or otherwise. *Stocki v. Nunn*, 2015 WY 75, ¶ 69, 351 P.3d 911, 931 (Wyo. 2015) (citing *Bratton v. Blenkinsop,* 2014 WY 87, ¶ 22, 330 P.3d 248, 253 (Wyo. 2014) (trial court has broad discretion in enforcing its scheduling orders, and rulings will not be reversed unless court acts unreasonably under the circumstances); *Black Diamond Energy, Inc. v. Encana Oil & Gas (USA) Inc.,* 2014 WY 64, ¶ 43, 326 P.3d 904, 915 (Wyo. 2014) ("A district court is generally afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of discovery.")).

[¶44] Mother claims that the decision not to strike Smidt's testimony was an abuse of discretion. However, Mother had ample time to prepare for the February 2016 hearing. Even if Smidt's records were not supplied until shortly before the January 4, 2016 discovery cutoff, she could have but did not request relief from it to conduct a deposition of Smidt, which she had earlier scheduled and then cancelled.

---

[19] The record also indicates Smidt would have provided the treatment records and CV on December 3 or 4 if the deposition had not been cancelled.

[20] We are painfully aware of the irony that Mother, who selected Smidt to treat her children, later sought to silence her in this case.

[21] We have some concerns about determining the meaning of an order from what is subjectively meant by its author, rather than from what a reasonable person would understand it to mean based on the language used. *In re CDR*, 2015 WY 79, ¶ 24, 351 P.3d 264, 270 (Wyo. 2015) (consent decree must be construed as written).

[¶45]   Beyond that, she has not shown any prejudice.  *Dane v. Dane*, 2016 WY 38, ¶ 20, 368 P.3d 914, 918 (Wyo. 2016) (noting that prejudice must be shown even if there is an abuse of discretion).  At the hearing on the motion to strike Smidt's testimony, the court invited Mother's counsel to hold Smidt to the information contained in treatment records by objecting as much as she needed at trial.  When Father's counsel asked Smidt if she would recommend that the children remain in his custody, Mother's counsel objected, and the objection was sustained, consistent with the court's pretrial ruling.  There were no other objections to the scope of Smidt's testimony.  For all of the above reasons, we find no abuse of discretion.

**Whether the Change in Circumstances Warranted a Change of Custody**

[¶46]   Mother also contends that the district court abused its discretion in determining that her move to Gillette warranted a change in custody after a full hearing was held.  We review orders modifying custody, visitation, and child support for an abuse of discretion and will not disturb an order regarding custody or visitation so long as the court could reasonably conclude as it did.  *Roemmich v. Roemmich*, 2010 WY 115, ¶ 7, 238 P.3d 89, 92 (Wyo. 2010).  We evaluate the reasonableness of a decision in relation to the evidence presented, viewing it in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party, and ignoring any conflicting evidence.  *Jensen v. Milatzo-Jensen*, 2013 WY 27, ¶ 7, 297 P.3d 768, 772 (Wyo. 2013).

[¶47]   Mother's assault on the court's decision is nothing more than a request that we view the evidence more favorably to her and to bring into play evidence that the court apparently felt to be either neutral to both parties or relatively inconsequential.  As we observed above, the court decided that the children's suffering because of the planned move was much more serious than in most comparable cases, and that they were receiving help through a stable therapeutic relationship in Sheridan.  The court was also concerned that, rightly or wrongly, both children were quite disturbed by what they perceived as Mother's inattentiveness to their needs.

[¶48]   We cannot fault the district court's reasonable decision to rely upon the evidence it did.  It did not abuse its discretion in changing custody to Father.

**The Right to Travel and Associate with Family**

[¶49]   Mother asserts that as a matter of law the district court could not change custody solely because of her relocation and factors caused by that relocation because to do so would adversely impact her constitutionally protected rights to travel and to familial association.  We review such questions of law de novo.  *Arnott v. Arnott*, 2012 WY 167, ¶ 11, 293 P.3d 440, 444 (Wyo. 2012).

[¶50] Prior to *Arnott*, this Court indulged in a presumption that a move by one parent and the consequences thereof could not alone constitute a material change of circumstances. *Watt v. Watt,* 971 P.2d 608, 614 (Wyo. 1999). This Court overruled *Watt* in *Arnott*:

> On further examination of *Watt,* we find that its exclusive focus on the custodial parent's right to travel is not supported by our earlier precedent, and that the decision, in holding that a relocation, by itself, cannot constitute a material change in circumstances, unjustifiably elevates the custodial parent's right to travel over the competing interests of the minority time parent and the state's concern for the best interests of the child. Although a custodial parent's right to travel is entitled to protection, this interest must be weighed against the minority time parent's right to maintain a close relationship and frequent contact with his or her children. Further, because the goal in custody cases is to reach an arrangement that promotes the best interests of the children, the rights of both parents must be considered only to the extent that they are consistent with that goal. Ultimately, we agree with the conclusion reached in other jurisdictions that presumptions in favor of one parent or another are detrimental to the interests of all parties in cases involving modification of child custody based on relocation of a custodial parent.

*Arnott,* ¶ 38, 293 P.3d at 457.

[¶51] Mother seems to ask us to step back to the era of *Watt* and its progeny. We decline to do so. As *Arnott* recognized, even the fundamental constitutional rights of a parent must yield to the best interests of the children. *Id.* ¶¶ 30, 31, 293 P.3d at 454.

[¶52] The district court did not change custody solely because Mother moved. It fully considered the impact the move had and would have on the children's best interest, and it based its decision on what it reasonably believed to be in their best interests, as we have already noted. We therefore reject Mother's final contention of error.

## CONCLUSION

[¶53] We find no error in the proceedings that led up to this appeal. We therefore affirm.